State v. Headrick.

THE STATE v. HEADRICK, Appellant.

Division Two, February 1, 1904.

Criminal Law: ASSAULT WITH INTENT TO KILL: TWO COUNTS IN INDICTMENT: ACQUITTAL ON FIRST BAR TO CONVICTION ON SECOND. Defendant was acquitted on the first, and convicted on the second, count of an indictment, the first count of which charged that: "He, the said Headrick, with the deadly weapon aforesaid, him, the said August Holliday, then and there willfully, etc., did stab, strike, cut, penetrate, bruise and wound, with the intent . . . to kill and murder, contrary," etc. The second count charged that: "The said Headrick, with a deadly weapon, to-wit, with a knife, the right hand and arm of the said August Holliday . . . did cut and disable, with the intent . . . to kill and murder, contrary," etc. *Held*, that, the essence of the offense charged, to-wit, an assault with intent to kill, being the same in each count of the indictment, an acquittal on the first count operates as a bar to a conviction on the second.

Appeal from Cape Girardeau Circuit Court.—*Hon. H. C. Riley*, Judge.

REVERSED.

*Wilson Cramer* for appellant.

In his motion in arrest of judgment defendant moved the court "to arrest the judgment, and that no judgment be entered on the verdict of the jury" because the assault alleged in the second count is the same set out in the first count upon which defendant was acquitted, and such acquittal entitles defendant to a discharge from further prosecution. The court should have sustained the motion and discharged the defendant, and committed error in not so doing.

*Edward C. Crow,* Attorney-General, and *C. D. Corum* for the State.

Citation of authority is not necessary to show that, in cases where the charge is contained in several counts and the verdict is guilty on one count and silent as to the others, this, by operation of law, amounts to an acquittal on the other counts. It would have been better had the State entered a *nolle* as to one count in this indictment, but the fact that it did not do so does not vitiate this proceeding. This court has held that it is more in conformity with the regularity of procedure in such case for the court to enter a *nolle prosequi* as to the count on which the State does not wish to proceed, or "to have found in defendant's favor in regard thereto." State v. Whitton, 68 Mo. 91.

FOX, J.—Appellant was convicted upon the second count of the indictment in the circuit court of Cape Girardeau county and his punishment assessed at imprisonment in the penitentiary for the term of five years.

The indictment, containing two counts, is as follows:

"The grand jurors of the State of Missouri, duly empaneled, sworn and charged to inquire within and for the county of Cape Girardeau, State aforesaid, on

their oath, present and charge that Lige Headrick, of said county and State, on or about the twenty-third day of June, A. D. 1901, in and upon the body of one August Holliday, then and there being, feloniously, on purpose, willfully, and of his malice aforethought, with a deadly weapon, to-wit, a knife, which he, the said Lige Headrick, then and there in his hand had and held, did, then and there, make an assault with intent, then and there, him, the said August Holliday, feloniously, on purpose, willfully and of his malice aforethought to kill and murder, and he, the said Lige Headrick, with the deadly weapon aforesaid, him, the said August Holliday, then and there, willfully, feloniously, on purpose and of his malice aforethought did stab, strike, cut, penetrate, bruise and wound, with the intent, then and there, with the deadly weapon aforesaid, him, the said August Holliday, willfully, on purpose and of his malice aforethought, feloniously to kill and murder, contrary to law and against the peace and dignity of the State.

"And the grand jurors aforesaid, empaneled, sworn and charged, as aforesaid, on their oath aforesaid, do further find, present and charge that Lige Headrick, at the county of Cape Girardeau, State of Missouri, on or about the twenty-third day of June, A. D. 1901, in and upon one August Holliday, on purpose and feloniously, did make an assault, and the said Lige Headrick, with a deadly weapon, to-wit, with a knife, the right hand and arm of the said August Holliday, on purpose and of his malice aforethought, unlawfully and feloniously, then and there did cut and disable, with the intent, him, the said August Holliday, then and there and thereby on purpose and of his malice aforethought, unlawfully and feloniously to kill and murder, contrary to law and against the peace and dignity of the State."

The facts shown by the evidence are substantially as follows:

Both the defendant and the prosecuting witness, August Holliday, are boys, the one being in his nine-

teenth and the other in his seventeenth year at the time
of the difficulty on June 23, 1901.   They were entire
strangers to each other and met for the first time on the
afternoon of Sunday, June 23, 1901, at a saw mill sit-
uated a short distance southeast of the city of Jackson.
This mill was between the railroad which runs north in
the valley and a public road running parallel with the
railroad and crossing it a short distance north of the
mill where it connects with a street.

Starting at the mill and going north along the track
of the railroad the objects mentioned in the testimony
are as follows:   After passing the point where the pub-
lic road just mentioned crosses the track, the first object
is the office of the tiling factory on the right hand or
east side, next the water tank on the left, a little beyond
this the crossing of the Jackson gravel road which comes
from the east, next, on the right, the flouring mill and
immediately opposite, on the left, the elevator.   Some
distance further, on the same side, the house spoken of
as the Obermiller house, and beyond this, on the right,
the beer depot which is a considerable distance north of
the mill.   The railroad has a side track which leaves
the main track somewhere north of the flouring mill and
passing on the east side of the mill going south, crosses
the Jackson gravel road between an iron bridge on
that road and the residence of Mr. Al. Rice situated on
the south side of the gravel road and but a short distance
from it.  After the gravel road crosses the railroad track
just north of the water tank it turns to the right, going up
an incline, and connects on the ridge with a street run-
ning north, parallel with the railroad, and on the east
side of this street, between it and the railroad, is the ele-
vator.  At the intersection of this street with one running
west and nearly opposite the elevator is the residence of
Dr. Koehue, immediately opposite Dr. Koehue's is the
Turner's Hall and going west on the street just men-
tioned the Catholic church is passed two blocks from

Dr. Koehue's corner.  From this corner to Sibley's restaurant it is nearly four blocks.

On Sunday afternoon, June 23, 1901, there was a beer drinking at the saw mill at which a number of young men and boys had congregated; among them were the defendant and the prosecuting witness, August Holliday, who participated in the festivities of the occasion.

Some time late in the afternoon defendant and Dan Payton were in the water closet together and were talking about John Headrick, the brother of defendant, who was executed for murder about two years before.  About this time Holliday came into the closet and made the remark, "Yes, John was all right, but he got his damned clock fixed." Defendant said to him that he should not "throw up his brother John to him, that he did not like to hear it." It seems Holliday kept on talking, and finally defendant told him that if he did not shut up, he would make him do so.  About this time they stepped out of the water closet and defendant drew from his pocket a knife and struck at Holliday, but whether the knife was open or closed does not appear; the prosecuting witness himself says he does not know.  At all events, no wound was inflicted, the lick merely grazed the side of Holliday, who jumped away and arming himself with a club, was about to enter into active operations, when others ran in and separated the boys.  Mr. Loos, the owner of the saw mill, put Holliday out into the public road on the east side of the mill and directed defendant to go away.  Holliday stood out in the road challenging defendant to come out and settle the matter.  Defendant, however, did not go, but remained at the mill about half an hour, when he and two other boys, Wm. Niblack and Sherman Daly, started to go up into the city.  They got outside of the mill enclosure onto the railroad track, walked north on the track past the tiling factory and the water tank and then went up town, passing between Dr. Koehue's and the elevator, past the Catholic church to Sibley's res-

taurant.  They remained there a short time and then defendant and Wm. Niblack started home.  Niblack lived a mile east of town, immediately on the gravel road, and defendant on the Bainbridge road which enters the gravel road at the Niblack residence.  The proof tends to show that, after the defendant and his companions, Niblack and Daly, had gone up the railroad track on their way uptown, Holliday, as he passed the tiling factory going north on the railroad, made the remark that he intended to kill the damned son of a bitch.  As stated, defendant and Niblack started home from Sibley's restaurant.  They came down the way they had gone up and when they got to Dr. Koehue's they met Holliday who was coming up toward town. Holliday renewed the difficulty with defendant and seemed determined to fight.  Defendant told him he did not want any trouble with him, that he should go away and leave him alone.  Holliday was heard to say, ''You drew your knife on me, but I am not afraid of you,'' and was seen to draw back his club in a striking attitude, and defendant was noticed patting his pocket with his hand.  About this time Wm. Cunningham, who was down on the railroad track, called to defendant to come to him, and defendant immediately went to where Cunningham was.  Niblack and Holliday also went down to the railroad track.  Cunningham told defendant to leave Holliday alone and go on up the railroad track and go home.  He immediately started north on the railroad track and got as far as the beer depot, where he met and talked to a negro, Bud Thomas.  Holliday was seen coming up the railroad towards the beer depot, still carrying his club.  Defendant then went around the beer depot, got on a side track and walked south towards the mill, and without stopping, passed on to the gravel road, which was his direct route home, getting on the gravel road just in front of Al. Rice's house.  By the time he got there Holliday, who had turned and followed as soon

as he saw defendant going south and was seen running, caught up with defendant and renewed the difficulty. Mr. Rice came out and ordered them away. Defendant and Niblack, who had come up with Charley Daly, another boy, started east on the gravel road towards home and crossed the bridge. Daly who was behind with Holliday tried to keep him from following and wanted him to go back, but he would not do so. He still had his club and insisted on going, and he and Daly then started east on the gravel road. Defendant and Niblack were about 75 or 100 yards ahead of Holliday and Daly; had gone some distance when the latter two caught up with them. Holliday again renewed the difficulty; Daly interfered and told them not to fight, but Holliday insisted that the matter must be settled then and there. Daly then suggested that they should give up their weapons and fight a fair fight, to which defendant readily assented and offered to give up his pocket knife, the only weapon he had. Holliday, however, said he would "fight no man fair" and refused to lay down his club. At this Daly turned away and started back towards town. The difficulty then began. Defendant says that Holliday struck him on the arm with the club and continued to advance upon him with his club raised, as he backed away, and that he then ran in and cut him with his knife. Holliday denies striking him, but admits that he had his club raised and that defendant backed away from him. Mr. Alfred Green, who was on his porch some distance off, saw Holliday with his club raised and defendant backing away. Directly after this he saw both were down, but could not tell what was going on. Daly, who had gone but a short distance, immediately turned on hearing the disturbance, and going back placed his hand on the shoulder of defendant, who at once got up and started off towards home. He was arrested before he had gone more than a quarter of a mile and lodged in jail. Holliday received many wounds, one of them on the right arm about three inches above the elbow, which

State v. Headrick.

injured the nerve and caused paralysis of the extensor muscles.

There was testimony that Holliday was drunk, and it was claimed by the State that he was so drunk that he fell down. On the other hand, there was testimony that he was able to follow defendant around from place to place and even to run in order to catch up with him. Holliday stated on cross-examination that he followed the defendant with the intention of whipping him.

At the close of the evidence the court instructed the jury, the cause was submitted to them, and they returned the following verdict: "We, the jury, find the defendant guilty upon the second count of the indictment and do assess his punishment by imprisonment in the penitentiary for a term of five years, and we find him not guilty upon the first count of the indictment."

Judgment was pronounced in accordance with the verdict, and after unsuccessful motions for new trial and in arrest of judgment, defendant prosecutes his appeal to this court and the record is now before us for review.

## Opinion.

It will be observed that the jury, by their verdict, affirmatively stated that the defendant was not guilty as charged in the first count of the indictment, and on the other hand expressly stated that he was guilty as charged in the second count.

The question confronting us in this cause, which overshadows all others, involves the correctness of the verdict as returned upon the two counts in the indictment.

Can both these findings, as made by the jury in the verdict, stand, or did the acquittal of the defendant of the charge as contained in the first count, operate as a bar to his conviction in the second count? This is the vital question presented, and its solution, maintaining

the contention of appellant, ends this case and renders it unnecessary to pass upon the other assigned errors complained of.

We have reached the conclusion that the acquittal of the defendant upon the first count of the indictment operates as a bar to his conviction upon the second count.

The first count of this indictment is predicated upon section 1847, Revised Statutes 1899; what is ordinarily termed the "bloody section."

The second count is based upon section 1846, Revised Statutes 1899; which defines the offense of "mayhem."

It will be observed that the allegations in the second count of the indictment charge the cutting and disabling of the right hand and arm of the prosecuting witness, with the intent to kill and murder, and not with the intent to maim or disfigure, as might have been very appropriately charged in the second count.

The first count of this indictment, after charging the assault upon August Holliday with a knife with intent to kill, concludes with this allegation: "And he, the said Lige Headrick, with the deadly weapon aforesaid, him, the said August Holliday, then and there willfully, feloniously, on purpose and of his malice aforethought, did stab, strike, cut, penetrate, bruise and wound, with the intent, then and there, with the deadly weapon aforesaid, him, the said August Holliday, willfully, on purpose and of his malice aforethought, feloniously to kill and murder, contrary to law and against the peace and dignity of the State."

We take it that it will not be seriously denied that the charge in the first count, as quoted herein, includes the infliction of every wound, of whatever nature or character, that was inflicted in the assault made by the defendant upon the prosecuting witness.

The second count of the indictment, after making the formal allegations, concludes with this charge:

"And the said Lige Headrick, with a deadly weapon, to-wit, with a knife, the right hand and arm of the said August Holliday, on purpose and of his malice afore-thought, unlawfully and feloniously, then and there did cut and disable, with the intent him, the said August Holliday, then and there and thereby on purpose and of his malice aforethought, unlawfully and feloniously to kill and murder, contrary to law and against the peace and dignity of the State."

The essence of the offenses charged in both counts of the indictment was the same; the assault as charged in the first count was with the intent to kill, and the charge in the second count of the cutting and disabling of the right arm of the prosecuting witness, was with the same intent. The jury, in order to convict on either count, were compelled to find that the assault was made with intent to kill.

We are unable to conceive how the jury upon the first count in the information, which includes all the wounds inflicted, could say that the defendant is not guilty of an assault with intent to kill, and upon the second count say that the cutting and disabling of the right arm of Holliday (which wounds, we repeat, were included in the first count) was done with the intent to kill him.

It is not the disabling of the right arm of the prose-cuting witness, as charged in the second count of the information, which constitutes the offense; that is sim-ply one of the aggravating ingredients of the offense; but on the contrary it is the disabling of the arm, with the specific intent to kill, that constitutes the offense.

It may be said that the disabling of the right arm of the prosecuting witness was not alleged and hence not involved in the first count of the indictment; that may be true; but the wounds, which resulted in the cut-ting and disabling of the arm, were alleged and were involved and were proven, and the jury by an affirma-tive verdict upon the first count, in passing upon the

identical wounds inflicted with the same weapon included in the second count, said defendant was not guilty as charged in that count, and we repeat our inability to ascertain upon what theory the jury, in the second count, upon the same wounds, by the same weapon as charged in the first, said they were inflicted with intent to kill.

Our attention is directed in the brief of respondent to the case of State v. Whitton, 68 Mo. 91, as maintaining the position that both these verdicts may legally stand. A careful examination of that case, together with the record in the cause, will make it apparent that it by no means can be construed as sustaining the contention of respondent in the case at bar, nor does it, in the announcement of any principle, conflict with the conclusions reached by this court upon the record before us.

While the opinion in the Whitton case does not disclose the nature and character of the counts contained in the indictment, the record on file in this court, which we have before us, furnishes this information. There were two counts in the indictment; the first count charges the stealing of one head of neat cattle on the eleventh day of July, 1876, of the value of sixteen dollars; the second one charges the stealing of two head of neat cattle on the twentieth day of July, 1876, of the value of twenty dollars per head. It will be observed in that case that the defendant was convicted upon the first count and the jury failed to make any finding at all on the second count. In other words, defendant was found guilty of stealing one head of neat cattle as charged in the first count; but there was no affirmative finding of not guilty on the second count; but even if there had been, the verdicts would not have been, as they are in this case, inconsistent. Note what the learned judge in the opinion in that case says: ''In reference to this it may be observed that the second count was practically abandoned at the trial, no evidence being introduced or instructions given respecting it.''

The jury may have very appropriately and consist-

ently said that there being no evidence offered upon the second count tending to show that defendant stole two head of cattle, and the court declining to further consider the charge by failing to give any instructions on it, we will find the defendant not guilty on the second count.

But on the other hand, there was testimony sustaining the charge as contained in the first count for stealing one head of neat cattle, and the court, by its instructions, confined the jury to the consideration of that count alone and they found the defendant guilty. We repeat, there would have been no inconsistency in the two verdicts, even had there been an affirmative finding upon each count.

That is not this case. Here we have two counts in the indictment, evidence introduced to support both of them, instructions covering both charges; the same wounds charged in the second count are included in the first; the same character of weapon charged in the second, is alleged in the first; the essence of the offense is identical in both counts, that is, the wounds were inflicted with intent to kill; two affirmative verdicts upon identically the same state of facts, one of not guilty on the first count and one of guilty upon the second.

With commendable frankness, counsel for the State admits that it is difficult to assign a reason for employing more than one count in the indictment; but in his argument to sustain the consistency of the two affirmative verdicts, he says: "At this distance we are unable to assign the reason of the prosecutor for employing more than one count, but a reason may have existed, nevertheless. It may have been a doubtful question as to whether the weapon used by the defendant was as a matter of fact a deadly weapon, and the State may have hesitated to have rested its case upon the section of the statute which levels its penalties against those persons who make an assault with a deadly weapon. From the wounds of the prosecuting witness, it would seem that

.the weapon was of a deadly character, but the character of the weapon was a question for the jury and not a question for this court or the trial court to pass upon."

The record fully answers this argument. Counsel for the State in assigning a reason for the acquittal of the defendant upon the first count, says that "The jury may have found that the weapon as charged in that count was not a deadly one." This only adds emphasis to the inconsistency of the two verdicts; if found that it was not a deadly weapon upon the first count, they clearly made a contrary finding upon the second, for the second count charges that the assault was made with the same knife, and expressly charges that it was a deadly weapon. Upon this count they found the defendant guilty as charged; hence the finding necessarily means that the assault was made with a deadly weapon, which is absolutely inconsistent with the theory of the finding of the jury upon the first count.

We fully recognize the well-settled rules of criminal pleading, that permits in the same indictment or information, separate counts, covering the intents with which an act is done. For illustration take this case: A count charging the cutting and disabling of the arm of the prosecuting witness, with the intent to maim and disfigure, or a count charging the maiming, wounding or disfiguring, could have been included, and an acquittal on the first count would not be a bar to a conviction on one of the other counts. In that case the verdict would not be inconsistent, for the jury may have found in the first count that he did not intend to kill, and on the other count that he did intend to maim or disfigure, or did maim, wound and disfigure. Again, a defendant charged in one count with an assault with intent to kill, under section 1847, supra, may be convicted of a felonious assault without malice, or there may be included in the same indictment or information two separate counts for an assault with intent to kill, one charged to have been done "on pur-

pose and of malice aforethought,'' the other omitting those aggravative elements of the offense. In that case an acquittal on one count would not bar a conviction on the other; they are simply counts making a distinction in the degrees of the offense.

On the other hand, it is not permissible to include in the same indictment or information, as was done in this case, a charge in one count of an assault with intent to kill, under section 1847, supra, and for the infliction of the same wounds, charge in another count, under a different section of the statute, the same elements of the offense embraced in the first, and that the wounds were inflicted with the same intent, that is, to kill.

In other words, if an assault is committed with a deadly weapon, and wounds are inflicted which result in the disability of the party assailed, the perpetrator may be prosecuted for an assault with the intent to kill, under section 1847, and there may be included in the indictment or information other counts charging the disability of the arm or leg of the party assaulted, from the same wounds as are necessarily included in the first count, with intent, as provided in the subdivisions of section 1846, to maim or disfigure, or may charge the felonious wounding, maiming or disfiguring as provided by section 1849, Revised Statutes 1899; but on the other hand, if the conviction is sought upon the same facts solely, whether for an assault with intent to kill, under section 1847, or under the subdivisions of section 1846, for disabling a limb or member of the assaulted party, with the intent to kill, then and in that case, we are clearly of the opinion that the State must stand upon one section or the other.

Apply this appropriate test to this case. If defendant had been charged in separate indictments, in one as charged in the first count, in the other as contained in the second, and first tried and acquitted of the charge in the first indictment, would it be seriously contended that, if called upon to answer the charge con-

tained in the subsequent indictment, including the same wounds inflicted by the same weapon, and the same intent, he could not plead in bar his acquittal upon the first indictment? We think not. There is no sound legal reason why the same principle should not be applicable where the charges are made in separate counts of the same indictment.

The jury in this case had before them in evidence all the facts connected with this assault, every wound, its nature and character, the results of the wounds inflicted, and they returned an affirmative verdict in which it was expressly stated that defendant was not guilty of an assault with intent to kill, and then stated upon the second count, upon the same state of facts, that he was guilty of inflicting the injuries with intent to kill. This verdict is inconsistent and contradictory and can not be permitted to stand.

So far as the two counts in this indictment are concerned, the essential elements of the offense are identical; the intent to kill, in each one of them, must be proven as laid, the only difference being in the one, that there must be an allegation as to the result of the wounds; but at last from the same injuries, the jury must find that they were inflicted with the intent to kill.

With all due deference to the able and well-known prosecuting officer who represented the State in the trial of this cause, and the esteemed and learned judge presiding at the trial, we have reached the conclusion that the acquittal of the defendant on the first count of the indictment, operates as a bar to his conviction upon the second count. This judgment is reversed and the defendant discharged.

All concur.