THE STATE v. ROY C. TOOMBS, Appellant.—34 S. W. (2d) 61.

Division Two, December 20, 1930.

982

*Abbott, Fauntleroy, Cullen & Edwards* for appellant.

*Stratton Shartel*, Attorney-General, and *Edward G. Robison*, Assistant Attorney-General, for respondent.

COOLEY, C.—Defendant was tried and convicted in the Circuit Court of the City of St. Louis for violation of Section 3350, Revised

Statutes 1919, the indictment charging that on or about January 17, 1928, he, being president of the International Life Insurance Company, a corporation, wilfully, designedly and feloniously procured the signing of a certain false and fraudulent certificate of ownership of three thousand shares of the capital stock of said corporation with felonious intent to issue the same, said certificate being numbered D11011. The jury assessed defendant's punishment at a fine of one dollar and three years' imprisonment in the penitentiary. From sentence and judgment upon the verdict he appeals.

The alleged false certificate, together with two others exactly like it in all respects except the serial numbers, was signed, dated and issued January 17, 1928. The other two were numbered respectively D11009 and D11010. Each certified defendant to be the owner of 3,000 shares of stock. The three were issued to defendant at the same time and as part of a single transaction, his purpose in procuring them, which was known to all parties concerned, being to pledge the 9,000 shares represented by the three certificates to the Great Southern Life Insurance Company as security for a $500,000 note he owed that company. He had previously, about August, 1927, procured the $500,-000 loan from the Great Southern through its president, Mr. Greenwood, pledging certain collateral as security. Desiring to take back the collateral first pledged he effected an agreement with Mr. Greenwood, acting for the Great Southern, in December, 1927, that he might and would substitute for the collateral then held by the Great Southern 9000 shares of stock of the International Life Insurance Company. The three certificates, D11009, D11010 and D11011, aggregating the 9,000 shares agreed upon between defendant and Greenwood, were immediately upon their issuance on January 17, 1928, sent by defendant in a letter of that date to Greenwood for the Great Southern, pursuant to their previous agreement.

When the above mentioned agreement with Greenwood was made, defendant did not own 9,000 shares of the International Life Insurance Company's stock. Its total authorized capital stock was then and on January 17, 1928, 37,500 shares, all of which had been issued and was outstanding. Prior to January 5, 1927, 23,624 shares of this stock were owned by a corporation known as the International Company, which is referred to in the record as the holding company. Defendant owned all or practically all of the common stock of the holding company. On January 5, 1927, the holding company by resolution of its board of directors, sold to defendant 15,924 shares of the Life Insurance Company's stock owned by it. Of this stock so sold to defendant over 10,000 shares, not pledged or encumbered, were represented by certificates then in safety-deposit boxes in two banking institutions in St. Louis. The resolution above referred to provided that the stock should be delivered to defendant at such times and in such blocks or numbers of shares as he might desire, to be paid for upon delivery,

but further provided that defendant should be entitled to possession of the stock before payment therefor upon giving to the president of the holding company an "interim certificate" for such stock as he desired to receive. For our present purpose we need not detail further the provisions relative to the interim certificates and payment for the stock.

Defendant claims that prior to January 17, 1928, he had given to the president of the holding company interim certificates which, if his statement was true, entitled him under the terms of the resolution of January 5, to immediate possession of the certificates of stock in the safety-deposit boxes. The president of the holding company, who was defendant's brother, was not called as a witness. Other officers of that company testified for the State that so far as they knew no interim certificates were given, nor were any bonds delivered, in payment of the stock sold to defendant by the resolution of January 5. Be that as it may, defendant did not get actual possession of the stock certificates in the safety boxes until after January 17, 1928. It appears, however, that the real reason for his inability to get the stock certificates was that keys necessary to open the boxes were held by other parties and continued so to be held for several months after defendant had bought the stock. It is by no means clear from the State's evidence that the parties holding the keys had any authority so to do after the resolution of January 5, and according to defendant's evidence they did not have such authority.

With matters in the situation above outlined, the three certificates numbered D11009. D11010 and D11011 were issued. In the evening of January 17, 1928, there was a meeting of the board of directors of the Life Insurance Company. After the meeting was over, defendant came into the office of the secretary, Darst, and asked him to issue to him (Toombs) three certificates of 3.000 shares each. Darst tore three blank certificates from the stock book. passed them to his assistant, who filled out the blank spaces and they were signed by Grantges, vice-president, and by Darst, secretary, and handed to defendant. who immediately enclosed all three, as above stated, in a letter to Greenwood. The evidence indicated that Grantges, being in a hurry, signed the blank certificates before they were filled out, but in any event the making out, signing and delivery of the certificates occupied but a few minutes and was all done at one time and pursuant to a single direction or request from defendant. Defendant testified that he, at the time, directed Darst to "charge" the certificates of stock thus issued against the stock in the safety-deposit boxes which he had acquired by the resolution of January 5. Darst testified that he did not recall that such direction was specifically given at that time, but admitted that he understood that that was to be done and that as soon as the keys to the boxes could be procured old certificates

986

then in the boxes to the amount represented by the new certificates were to be canceled.

Defendant contended throughout the case that the three certificates issued January 17th were never intended to represent new or additional stock, but were intended to be and were in fact only a *transfer* of stock which he in good faith believed he owned and had the right to transfer; and he sought, but was not permitted by the court, to show that as soon as he could get possession of the keys, about May or June following, he did in fact and pursuant to his original intent and the original understanding of the company's officers, produce and have canceled an equal amount of the old certificates, so that the outstanding stock of the company was not in fact increased. The State claimed that the certificates above mentioned constituted an over-issue of stock and were therefore false and fraudulent.

Prior to the trial of the instant case defendant had been tried and convicted for procuring the signing, with intent to issue, of certificate D11009 above mentioned, and sentenced to pay a fine of $3,000 and to three years' imprisonment in the penitentiary. On appeal to this court the judgment was affirmed and defendant is now undergoing the imprisonment thereby assessed. The opinion in that case is reported in State v. Toombs, 324 Mo. 819, 25 S. W. (2d) 101, which see for further statement of the facts, also the indictment which is there copied. The indictment and the alleged false certificate therein set out are identical with those in the instant case except for the serial number of the certificate. For the disposition which we have concluded must be made of this case the foregoing outline of facts is deemed sufficient.

Among the many contentions urged by appellant for reversal of the judgment herein is that he had been once tried and convicted for the same offense. If that contention is well taken it is decisive of the case. While the provision of Section 23, Article II, of our Constitution "nor shall any person, after being once acquitted by a jury, be again for the same offense, put in jeopardy of life or liberty," does not strictly apply, since defendant was not acquitted but convicted on the first trial, yet the common-law rule that no person shall for the same offense be twice put in jeopardy is in force in this State (State v. Linton, 283 Mo. 1, 222 S. W. 847) and precludes a second conviction and punishment for the same offense. We shall therefore first determine that question.

Defendant did not file a formal written plea of *autrefois convict* but sought to make that proof under the general issue or plea of not guilty, as authorized by Section 4007, Revised Statutes 1919. He offered in evidence a transcript of the entire record and proceedings of the former trial, including the indictment, evidence, instructions, verdict and judgment. As we understand the court's ruling, the record was admitted for the consideration of the court, but was excluded

from the jury, the court holding (with considerable doubt) that it did not sustain defendant's plea of former jeopardy. Since the whole record was thus before the court its legal effect was a question for the court rather than the jury to determine. [State v. Keating, 223 Mo. 86, 122 S. W. 699.] From the record thus offered it appears that the evidence offered by the State in the first trial was substantially the same as in the instant case. The substantive facts relied upon for conviction were the same except, of course, that in the first case the jury was required to find that defendant procured the signing of a false and fraudulent certificate numbered D11009, while the instructions in this case required the finding that he procured the signing of a false and fraudulent certificate numbered D11011. In both trials all three of the alleged false certificates, D11009, D11010 and D11011 were introduced in evidence. In both it appeared from the State's evidence that defendant had arranged with Greenwood to pledge to his company 9,000 shares of stock, without mention of the number of certificates by which such 9,000 shares were to be represented, and that he had given to Darst but one direction or request pursuant to which the three certificates aggregating 9,000 shares were signed and issued at the same time. He gave no direction as to the numbering of the certificates.

In determining the question whether defendant's act constituted one or three crimes we may eliminate from consideration cases holding that one act may be a violation of two statutes where an essential element of the offense denounced by one statute is not an essential element of the offense defined in the other, such as having carnal knowledge of a female of previous chaste character under the statutory age, in which the previous chaste character of the female is an essential element of the offense, and the defilement by a guardian of his ward, wherein previous chaste character of the female need not be shown but the relation of guardian and ward must appear. In such case we have held that an acquittal of one charge is not a bar to a prosecution under the other statute. [State v. Oakes, 202 Mo. 86, 100 S. W. 434.] It may well be doubted on principle, however, that if one were convicted under one of those sections of the statute he could again be prosecuted and punished under the other for the same criminal act, though we need not here decide that point.

Neither are cases directly in point which hold that there may be several distinct offenses committed in the course of the same general transaction, as, for example, separate and distinct sales of intoxicating liquor to the same or to different persons in the same transaction, generally speaking, and in immediate succession; of which State v. Salter (Mo. App.), 256 S. W. 1070, is an example. That principle is applied also in Ebeling v. Morgan, 237 U. S. 625, cited by respondent, in which case the accused at one time successively cut open several mail sacks with intent to steal from each and it was held that the cutting

open of each sack was a distinct offense, the statute being designed to protect each mail sack from spoliation. The learned Attorney-General argues by analogy that the statute involved herein was designed to protect each share of stock. We do not think, however, that he means to contend that defendant committed a separate offense for each of the 9,000 shares issued. The statute makes it an offense to cause to be signed, etc., "any false or fraudulent certificate . . . of the ownership . . . of any *share or shares* of the capital stock . . ." (Italics ours.) Obviously, under that statute, there could not be a separate and distinct offense for *each* share of stock represented in one certificate.

In 16 Corpus Juris, page 263, Section 443, the rule is stated to be that "the prohibition of the common law and of the constitutions is against a second jeopardy for the same 'offense,' that is, for the identical act and crime; or as expressed in a number of cases, to entitle a defendant to plead successfully former jeopardy, the offenses charged in the two prosecutions must be the same in law and in fact." See also 8 Ruling Case Law, page 143, sec. 128, and State v. Gustin, 152 Mo. 108, 53 S. W. 421. But the rule is well settled that the State cannot split up a single crime and prosecute it in parts, and that a prosecution for any part of a single crime bars any further prosecution based upon the whole or another part of the same crime. [16 C. J. 270, sec. 448; 8 R. C. L. 145, sec. 130.] Many cases in support of the texts are cited in the notes in both the above mentioned authorities.

Illustrative of the rule just stated it is said in 8 Ruling Case Law, supra:

"Thus when the facts constitute but one offense, though it may be susceptible of division into parts, as in larceny for stealing several articles of property at the same time, a prosecution to final judgment for stealing some of the articles will bar a subsequent prosecution for stealing any of the other articles taken at the same time."

The foregoing rule seems, by the weight of authority, to be held applicable in cases of larceny of several articles at the same time and place and as one continuous act even when the articles stolen belong to different persons. [See State v. Sampson, 157 Iowa, 257, 138 N. W. 473, 42 L. R. A. (N. S.) 967 and note; Wilson v. State, 45 Tex. 76, 23 Am. Rep. 602; State v. Emery, 68 Vt. 109, 34 Atl. 423, 54 Am. St. 878.] Such is the rule in this State. [Lorton v. State, 7 Mo. 55; State v. Morphin, 37 Mo. 373.]

In Henry v. United States, 263 Fed. 459, the Court of Appeals of the District of Columbia held that the embezzlement at the same time of two certificates of corporate stock belonging to different persons constituted but one offense, the court saying: "The principle is sustained by the overwhelming weight of authority that the stealing or conversion of property belonging to different persons at the same time and place constitutes but a single offense." [Citing cases from many

states.] This court, in State v. Laughlin, 180 Mo. 342, 79 S. W. 401, cited by respondent, held the rule inapplicable in an embezzlement case where the defendant was curator of two separate estates committed to him at different times and was charged by separate indictments with embezzling funds from each estate. Tried and acquitted in one case he then filed a plea of *autrefois acquit* in the other case, a demurrer to which was sustained. On appeal this court held the demurrer properly sustained, but distinguished embezzlement from larceny on the ground that under the statute upon which the charge was predicated a trust relation must exist, ''and it is the violation of this relation and the conversion of the fund that constitutes the offense;'' that no trust relation is violated in larceny, and that, having charge of the funds of different persons, the fact that he was found not guilty of embezzling the funds of one furnished no reason why, if guilty of embezzling the funds of the other, prosecution therefor should be barred.

The application of the rule forbidding the splitting up of a single crime and successive prosecutions for parts thereof is further illustrated in the following cases: State v. Egglesht, 41 Iowa, 574, 20 Am. Rep. 612, holding that delivery at the same time and by the same act to a bank teller of four forged checks purporting to have been drawn by four different persons constituted but one offense of uttering forged paper, and that prosecution for uttering one barred prosecution for uttering the others; State v. Moore, 86 Minn. 422, 61 L. R. A. 819, that conviction for uttering a forged mortgage barred a subsequent prosecution for uttering at the same time the forged note which the mortgage purported to secure (and see note to that case in 61 L. R. A. 819); Barton v. State, 23 Wis. 587, that uttering several forged drafts at one time is one offense; State v. Benham, 7 Conn. 414, that having in possession at one time with intent to utter them several counterfeit bills or notes purporting to have been issued by different banks is one offense; Gates v. State (Tex.), 271 S. W. 632, that possessing at one time with intent to pass nine forged instruments constituted one offense and conviction of possession of one of said instruments barred further prosecution for possession of the others; State v. Elliott (Wash.), 124 Pac. 212, that uttering several forged documents to the same person at one time and in one transaction constituted but one offense. That forging several names to the same instrument at one time constitutes a single offense, see Everage v. State, 14 Ala. App. 106, 71 So. 983, and State v. Coffman (Tenn.), 261 S. W. 678, 33 A. L. R. 559.

In State v. Rosenbaum, 23 Ind. App. 236, 77 Am. St. 432, a statute made it unlawful for the proprietor of a saloon to permit any person other than himself and family to go into the saloon at certain times. Two men had been allowed to go in together. Defendant had been tried and acquitted for allowing one of them to go in and such trial

was held a bar to the subsequent prosecution for permitting the other to go in at the same time.

In State v. Linton, supra, this court held that a prosecution for delivery of intoxicating liquor in violation of the Local Option Law was a bar to a subsequent prosecution for sale of the same liquor, the delivery having been made in completing the sale. The same principle was applied to somewhat similar facts in Schroeder v. United States, 7 Fed. (2d) 60, in which the indictment contained two counts, one for possession and one for transportation of the same liquor, the only possession shown being that incidental to the transportation, the court holding that to permit sentence on both counts would be to inflict double punishment.

In State v. Colgate, 31 Kan. 511, 3 Pac. 346, 47 Am. Rep. 507, the defendant had set fire to certain books of account which were in a grist mill and the fire spread to and consumed the mill. He had been tried and acquitted on a charge of arson for burning the mill. On a subsequent trial for arson for burning the books he pleaded the former trial in bar. In a well reasoned opinion, in which numerous cases are reviewed, the court held the plea good, saying that there was but one criminal act upon which but one criminal prosecution could be founded. The court quoted from 1 Bish. Cr. Law, sec. 1060, that "to give our constitutional provision the force evidently meant, and to render it effectual, 'the same offense' must be interpreted as equivalent to the same criminal act."

In State v. Roberts (La.), 93 So. 95, 24 A. L. R. 1122, it was held that a prosecution for transporting liquor in one parish was a bar to a prosecution for transporting the same liquor in one continuous transportation in another parish; that identity of offense does not mean formal, technical, absolute identity, but substantial identity. See also Weiss v. United States, 283 Fed. 785; State v. Shaver (Iowa), 198 N. W. 329; State v. Headrick, 179 Mo. 300, 78 S. W. 630; State v. Moore, 66 Mo. 372; 16 C. J. 264, sec. 443.

In State v. Mowser (N. J.), 106 Atl. 416, 4 A. L. R. 695, 700, it is said:

"The principle to be extracted from well considered cases is that by the term 'same offense' is not only meant the same offense as an entity and designated as such by legal name, but also any integral part of such offense which may subject an offender to indictment and punishment."

In 16 Corpus Juris, page 264, sec. 443, it is said:

"The term 'same offense' . . . does not signify the same offense eo nominee, but the same criminal act, transaction, or omission."

In State v. Huffman, 136 Mo. 58, 62, 37 S. W. 797, this court quoted approvingly from State v. Smith, 43 Vt. 324, as follows:

"When one offense is a necessary element in and constitutes an essential part of another offense, and both are in fact but one transac-

tion, a conviction or acquittal of one is a bar to the prosecution for the other."

In 8 Ruling Case Law, page 144, sec. 128, it is said that ". . . if there was one act, one intent and one volition, and the defendant has been tried on a charge based on such act, intent and volition, no subsequent charge can be based thereon . . ' ." The three certificates hereinabove referred to were not only signed and issued in one transaction and at one time but the procurement by defendant of their signing and issuance was by one request or direction and with a single intent.

"A test almost universally applied to determine the identity of the offenses is to ascertain the identity, in character and effect, of the evidence in both cases. If the evidence which is necessary to support the second indictment was admissible under the former, was related to the same crime, and was sufficient if believed by the jury to have warranted a conviction of that crime, the offenses are identical, and a plea of former conviction or acquittal is a bar. But if the facts which will convict on the second prosecution would not necessarily have convicted on the first, then the first will not be a bar to the second, although the offenses charged may have been committed in the same transaction." [16 C. J. 265, sec. 445.]

The same authority states, however, in Section 443, page 264, that the proofs in the two prosecutions need not be identical, and this is necessarily so. Otherwise the State could split up a single crime and prosecute as many times as there were parts into which the offense was susceptible of being divided, and a prosecution for one part would not bar a subsequent prosecution for another part because there would not be absolute identity either in the indictment or the proof. For example, if at the same time and place and as one act one stole a watch and money belonging to the same person and were prosecuted and convicted under an indictment charging theft of the watch alone, and should then be indicted for stealing the money, both the charge and the proof in the second case would necessarily differ from the first in describing the thing stolen. Yet in such case it could hardly be contended that two separate offenses had been committed. [State v. O'Connell, 144 Mo. 387, 46 S. W. 175.]

In this case the material facts .relied upon by the State to show defendant's guilt and that were necessary to support the indictment herein were the same as those proved and upon which he was convicted under the first indictment. As we have stated above, the evidence tending to show his guilt and upon which conviction must rest is in all material respects the same in both cases. Under the evidence, if defendant was guilty of the crime charged in the first case he would necessarily be guilty of that charged in the second, and if innocent of one he would necessarily be innocent of the other.

The situation here presented seems to us to meet both of the tests above quoted from Ruling Case Law and Corpus Juris. We are aware that in applying to concrete cases the general rules that may be said to be fairly well established, in endeavoring to determine whether in a given case there was one offense committed or several, appellate courts have reached different conclusions upon facts that, if not the same, at least appear to be of similar nature and to call for the application of the same principle. We shall make no attempt to reconcile these apparently conflicting decisions. We have found no case that seems directly in point in its facts.

It is not in keeping with the spirit of our law that one should be twice punished for the same crime. The guaranty that no person shall for the same offense be twice put in jeopardy has always in this country been regarded as one of the most sacred rights of the individual. While courts should not so apply the principle as to defeat the design of the penal laws to protect society and prevent crime, we think no legitimate purpose of the criminal laws would be subserved by a technical construction whereby several prosecutions might be maintained and several punishments inflicted for what constitutes essentially one criminal act. It is our opinion that defendant committed but one offense for which he has been convicted and is being punished, and that his plea of former conviction should have been sustained. We think the following cases, as well as those above cited, support this conclusion: Hurst v. State, 86 Ala. 604, 6 So. 120, 11 Am. St. 79; Clem v. State, 42 Ind. 420, 13 Am. Rep. 369; Spannell v. State (Tex.), 203 S. W. 357, 2 A. L. R. 593.

As this conclusion disposes of the case it is unnecessary for us to consider other questions presented. The judgment of the circuit court is reversed and the defendant is discharged as to this case. *Davis, C.,* concurs; *Westhues, C.,* not sitting.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.