Gilbert MADISON, Appellant,

v.

STATE of Missouri, Respondent.

No. 35471.

Missouri Court of Appeals,
St. Louis District,
Division One.

Feb. 3, 1976.

Christopher T. Hexter, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Chief Counsel, Scott A. Raisher, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., St. Louis, for respondent.

RENDLEN, Judge.

This appeal is from denial of appellant's Rule 27.26 motion seeking relief from his conviction of first degree robbery with a dangerous and deadly weapon. Appellant contends: (1) The court erred in not finding his conviction was violative of protection afforded by the United States and Missouri Constitutions against double jeopardy; and (2) error in failing to provide a full record of his first trial. For reasons set forth herein, we affirm.

Madison's first robbery trial commenced March 19, 1968, terminating in mistrial March 22. Upon re-trial in April of that year, the jury found appellant guilty assessing his punishment at 99 years. In the appeal, affirming conviction, *State v. Madison*, 459 S.W.2d 291 (Mo.1970), no issue of double jeopardy appears to have been suggested, raised or ruled.

By his post-conviction motion filed May, 1972, appellant contends the aborted trial in March, 1968, rendered the second constitutionally impermissible under the provisions of the Fifth and Fourteenth Amendments of the U.S.Const. and Art. I, § 19 of the Mo.Const.[1]

On the third day of the first trial, the prosecutor notified the court witness Eliza Ann Fox could not be found and advised the State was unable to proceed at that time.[2] By agreement of counsel, a recess was declared until the following morning to permit finding the witness but the next day the prosecution announced the witness was still unavailable, stating: "We have proceeded as far as we can go at this time, short of entering whatever exhibits are not entered at this time." On this indication that the State had concluded its case in chief, the court turned to defense counsel and asked him to proceed. Defense counsel instead requested a conference in chambers and in that conference complained the State had not "tied-in" certain conditionally admitted testimony which now could not be rendered competent since the evidentiary gap would not be filled by the missing witness. The court inquired what he was asking of the court and after more discussion defense counsel requested "a directed verdict of acquittal." The court denied the

1. A concise discussion of underlying constitutional and common-law principles regarding double jeopardy is contained in *State v. Aguilar*, 478 S.W.2d 351, 353–354[1–3] (Mo. 1972): "The Fifth Amendment to the Constitution of the United States provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb,' and in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, it was held that the guarantee of the Fifth Amendment against double jeopardy is enforceable against the states through the Fourteenth Amendment. Although Missouri could by Constitution or statute, be more restrictive than the requirement of the Fifth Amendment, as construed by the federal courts, the Fifth Amendment requirements are the minimum permissible standards. The provision of Art. I, § 19, Constitution of Missouri, V.A.M.S., that 'nor shall any person be put again in jeopardy of life or liberty for the same offense, after being once acquitted by a jury,' does not strictly apply [in cases not resulting in acquittal by a jury] but 'the common-law rule that no person shall for the same offense be twice put in jeopardy is in force in this state * * *, and precludes a second conviction and punishment for the same offense.' *State v. Toombs*, 326 Mo. 981, 986, 34 S.W.2d 61, 63. We find no readily discernible difference between the Fifth Amendment guarantee against double jeopardy and the common-law guarantee as applied in this State. *State v. Richardson*, Mo., 460 S.W.2d 537."

2. Nothing in the record suggests the State had other than in good faith secured the presence of the witness, and through no neglect on its part, she left and could not be found. Ms. Fox had been in court the previous day and also earlier on March 21.

oral motion noting that notwithstanding the testimonial gap there was sufficient evidence for a submissible case. Defendant had then the choice of requesting curative instructions, proceeding without the benefit of such instruction or requesting a mistrial. He chose instead to continue his argument that "error" had occurred in the trial. The court finally inquired what he was requesting: THE COURT: "What are you asking?" Mr. Harris replied: "Whatever the court see[s] fit to do." Harris resumed arguing there was "error" in the trial.

It is clear the defense sought to force the court to declare a mistrial and establish a possible claim of double jeopardy. During the ensuing colloquy in which the trial court displayed admirable restraint, the prosecution noted that defense "counsel yesterday moved for a mistrial; the Court said that it would be denied at this time . . . May I respectfully call the Court's attention to counsel's motion for a mistrial and ask the Court then to finally rule on that motion." Defense counsel denied such motion was before the court, claiming it had been passed upon and denied when made. Asked by the court whether he was withdrawing the mistrial motion, defense counsel replied: "I am not withdrawing anything." The court then stated that defendant's motion "previously made for a mistrial will be granted and a mistrial *will* be declared." Defense counsel objected that there were no outstanding motions for mistrial and declared that he was withdrawing his pending motions:

> "THE COURT: Let me ask you, are you withdrawing your motions previously made with reference to a mistrial?
>
> MR. HARRIS: I am not withdrawing anything Judge; I am not withdrawing anything.
>
> THE COURT: You still have those before the Court?
>
> MR. HARRIS: No, no. That motion was before the court, passed on and denied at that time."

Following further colloquy, the court asked defense counsel:

> "THE COURT: I am asking Mr. Harris, so that the record might be abundantly clear, are you withdrawing your previous motions for a mistrial?
>
> MR. HARRIS: Judge, whatever is on the record, is on the record. There has been additional evidence and additional testimony on the record.
>
> THE COURT: You are not withdrawing those motions?
>
> MR. HARRIS: I am standing on the record.
>
> THE COURT: The motions previously made for a mistrial will be granted and a mistrial will be declared.
>
> MR. HARRIS: I didn't ask for a mistrial.
>
> THE COURT: You did previously."

This exchange was followed by more discussion including personal argument between the prosecutor and defendant concerning evidence of defendant's guilt and other charges the State intended to file. Attempting to bring the matter to conclusion, the court announced again a mistrial would be declared and defense counsel for the first time countered with the statement that the defense was ready to proceed with trial. Immediately the prosecutor, apparently seeking to determine if this meant defendant's motion for mistrial had been finally withdrawn, inquired of defense counsel:

> "MR. FREDERICKS: (Prosecutor) May I say something on the record right now? Are you indicating to all there is no error in this record which would give you a motion for a mistrial?
>
> MR. HARRIS: (Defense counsel) I am not going to answer that. I'll stand on the record.
>
> MR. FREDERICKS: Well then, if he would say that[,] I will say he is asking for his cake and wants to eat it too, if he will say there is no error in the record."

After another fruitless round of argument, the court ordered additional recess indicating he would take at least a half hour to research the question.

When proceedings resumed and all had been afforded abundant opportunity to reflect, consult with clients and conduct such research as they might wish, the court, still out of the jury's presence, asked defense counsel if he had any announcement, to which defense counsel replied: "May I move the court for a mistrial on the grounds heretofore stated and on the grounds I had voiced in Chambers previously."

"THE COURT: And in the other respects that you had previously mentioned?

MR. HARRIS: At all times previous to this, your Honor that my motion for a mistrial was made and *I am renewing that motion* at this time. (Emphasis added.)

THE COURT: You are moving now for a mistrial?

MR. HARRIS: Right."

Thereupon the court made this direct inquiry of defendant concerning the request for mistrial:

"THE COURT: You are following Mr. Harris' advice, are you?

THE DEFENDANT: That's right.

THE COURT: He has discussed this matter with you on a number of occasions, has he, back in the Fall, and you are satisfied with his advice and satisfied with his recommendations?

Defendant nods his head in the affirmative."

Being thus satisfied that defendant and defense counsel understandingly chose mistrial, the court sustained the motion and discharged the jury.

As noted above, one month later in the second trial, appellant was convicted and that conviction affirmed on appeal.

In examining appellant's contention that the second trial was violative of his constitutionally-protected right against being put twice in jeopardy for the same crime, the determinative factor is whether appellant's motions for mistrial, made both before and after the meeting in chambers, bars the double-jeopardy claim. Ordinarily a claim of double jeopardy in violation of the Fifth Amendment does not arise from the later trial of a defendant following a mistrial declared by the court upon the defendant's own motion. *Roberts v. U. S.,* 477 F.2d 544, 545 (8th Cir. 1973). From the record we conclude that appellant, on the considered judgment of counsel, waived the claim of double jeopardy by voluntarily requesting mistrial. Appellant contends making that motion was coerced by the trial court and threats of the prosecutor, citing as authority, *U. S. v. Walden,* 448 F.2d 925 (4th Cir. 1971). We do not agree and the record does not support this contention.

The critical point leading to the jury's discharge was the State's announcement on April 21 that witness Fox was missing. As observed above, there is no suggestion of bad faith or want of diligence on part of the State in procuring her presence or conditionally presenting evidence to be "tied-in" by her testimony. It was the failure to fill this evidentiary gap which constituted the then claimed error and for this "error" the defense requested but was properly refused a directed verdict of acquittal since other evidence justified submission of the case. As previously noted, the alternatives facing defendant were: (1) Proceed with the trial he earnestly argued was blemished; (2) request curative instructions and proceed; or (3) request mistrial. The defense instead repeated its request for acquittal of defendant. The ensuing conferences in chambers and in court out of the jury's presence, included a melange of procedural thrusts and counterthrusts by counsel seeking advantage for their respective positions. These included: Argument by the prosecutor that the defense had previ-

ously moved for mistrial; the parties dispute whether that motion had been conditionally or finally overruled; defendant seeking to obtain an order of "acquittal"; the prosecution suggesting the prior defense motion for mistrial should be ruled; withdrawal of that motion by the defense; the court's attempt to bring the matter to a head by asking the defense what they were requesting and the defense rejoinder "whatever the court sees fit to do"; the court indicating that the prior motion for mistrial would be sustained followed by defendant's "withdrawal" of any previous motion and the prosecutor's statement he would try defendant on other cases (assault charges); and finally, defendant opting to proceed without requesting curative action for the error he adamantly insisted pervaded the trial. A further recess was declared to provide the court an opportunity to research the law and the parties time to examine their positions. If the defense persisted in withdrawal of its mistrial motion and asked no curative action, it faced the possibility of waiving its claim for prejudicial trial error. Apparently recognizing the State had made a submissible case or in any event seeking to avoid submission of the case on evidence containing the alleged "error," defendant on resumption of trial moved for mistrial "on the grounds heretofore stated and on the grounds that I had voiced in Chambers previously . . ." and stating further that this motion was a renewal of his prior motion to like effect. It is significant that defense counsel based the motion on the grounds he had previously voiced, referring to his contention that defendant's case had been damaged and prejudiced. From these circumstances it can be seen the final mistrial motion was not the result of a "Hobson's choice" as described in *U. S. v. Dinitz*, 492 F.2d 53 (5th Cir. 1974) and was more than the mere

"ceremonial motion" of *U. S. v. Walden, supra* at 931. Indicating the motion would be granted, the court determined from defendant personally that he was acting on and was satisfied with the advice of counsel. Appellant's present contention he did not understand the effect of the mistrial motion, is neither apt nor meritorious.

Though appellant now argues the prosecution's misconduct coerced appellant's move for mistrial, the record belies this charge and the comment of defendant's counsel at the close of those proceedings reveals defense counsel's contrary view at that time.[3] It is further important that since a submissible case had been made, discharge of the jury was in the interest of the defendant, cf. *Gori v. U. S.*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), and appellant was the beneficiary of that ruling. The situation leading to mistrial clearly was not compelled by bad faith, prosecutorial conduct aimed at triggering a mistrial in order to get another day in court and from the apparent seriousness of the trial error, the trial court might well have sua sponte aborted the trial under the traditional standard of "manifest necessity" first enunciated in *U. S. v. Perez, supra* (1824). In measuring appellant's contention of error we do so against the policy statement of our Supreme Court in *State v. Aguilar, supra* at 354[4]: "The prohibition against placing a defendant 'twice in jeopardy' represents a constitutional policy of finality for defendant's benefit" but this policy is tempered by the holding in *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949), that "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." Stated somewhat differently in *U. S. v. Dinitz*, 492 F.2d 53, 57 (5th Cir. 1974), the court pointed

---

3. "MR. HARRIS: Your Honor, just a closing remark for the record . . . may the record show that notwithstanding whatever, I hesitate to use the word bitterness, but rift that may have existed between Mr. Fredericks and myself yesterday, I want to commend him and state to the Court that he is probably one of the most sincere, one of the most honorable prosecutors I have had the privilege to try a case with."

out in discussing the "manifest necessity" rule of "Perez"[4] in double-jeopardy cases, that "This rule represents a balancing on the one hand of a criminal defendant's valued right to complete his trial before a particular jury . . . (cases cited) and on the other, society's interest in fair trials and preventing 'the guilty from going free.'" In this context we find no error and rule against appellant's first contention.

■ Finally, appellant argues that the court abused its discretion in overruling appellant's request for a full trial transcript of the first trial (March, 1968) and thus "denied Appellant his right to a fair hearing." We find facts determinative of the double-jeopardy issue are set forth in the transcript as provided; and while uncertainties appear as to defense counsel's earlier mistrial motions and the court's disposition of those motions, these matters are not controlling and appellant offers no explanation or viable argument how a full transcript would disclose facts leading to a different result here. Failing that, appellant is not entitled to embark upon "a fishing expedition to determine if any kind of error can be found." *State v. Keeble*, 427 S.W.2d 404, 408 (Mo.1968). This point is also ruled against appellant and the judgment is affirmed.

WEIER, P. J., and DOWD, J., concur.

4. *U. S. v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).