**STATE of Missouri, Respondent,**

v.

**James TURNER, Jr., Appellant.**

**No. 37550.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

Aug. 31, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Nov. 12, 1976.

Application to Transfer Denied
Dec. 13, 1976.

Robert C. Babione, Public Defender, C. Adelman Adler, Asst. Public Defender, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Christopher R. Brewster, Asst. Attys. Gen., Jefferson City, for respondent.

CLEMENS, Presiding Judge.

The state charged defendant in separate counts with illegal sales of LSD (Sections 195.200 and 195.240, Laws, 1975) and, sitting without a jury, the court found defendant guilty on all five counts. Defendant was sentenced to six-year concurrent terms on counts 1 and 2; eight-year concurrent terms on counts 3 and 4, to run consecutively to the six-year sentences imposed in counts 1 and 2; a ten-year term on count 5, to run consecutively to the six and eight year sentences.

Defendant appeals, contending the trial court erred in denying his pre-trial motion to identify a material witness, erred in admitting evidence identifying the drugs, and erred in imposing sentences constituting double jeopardy. These in turn.

On the day of the first sale, two undercover narcotics officers picked up an informant known to them only as Jim. One of the officers had met Jim two weeks earlier after hearing he had been selling narcotics, but Jim was otherwise unknown to the officers. Jim directed the officers to 2620 St. Vincent in St. Louis, where he introduced them to defendant whom they had not known before. Each officer purchased LSD from defendant while Jim watched. Without asking Jim any more questions, the officers returned him to the street corner where they had found him. The officers returned on each of the next two days and made other LSD purchases from defendant. After each sale they took the purchased items to a police chemist who determined each contained LSD. They testified the state's exhibits were in sealed packets containing the substance defendant had sold them.

The defense was misidentification. Defendant testified he had not lived at 2620 St. Vincent at the time of the alleged sales but the rest of his family, including three grown brothers, did live there. He testified he was not at 2620 St. Vincent at the time of the sales and denied he had made the narcotic sales.

■ Defendant contends the trial court erred in denying his pre-trial motion to disclose the identity of Jim, a material witness, because he was the only witness to the sales other than the police officers and his testimony might have refuted the officers' identification and shown defendant was not

the seller. Defendant argues that Jim was the only witness other than himself who could contradict the narcotics officers' identification.

Defendant cites *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), which holds that permitting the prosecution to withhold the identity of an undercover informer in the face of the accused's demands for his disclosure was prejudicial error when only the informer could contradict the government's witnesses. He also cites *State v. Davis*, 450 S.W.2d 168 (Mo.1970), which reversed a conviction where the defense was entrapment and the trial court refused to order the disclosure of an informant who was the only witness who could support defendant's contention. Defendant also cites *State v. Hubble*, 494 S.W.2d 358 (Mo.App.1973), holding the trial court did not err by refusing to order disclosure of an informant's name when defendant had made no record of why the disclosure was vital to his case. *Hubble* suggests that had the defendant made a record of why he needed the name of the informant, the court would have ordered disclosure. Here, defendant contends the law required the state to give him Jim's name and address. The weakness of this argument is that in all three cited cases the informant's identity was known to the police, whereas here the police testified they had only two brief encounters with Jim, have not seen him since the first sale and know neither his last name nor his address.

■ We know of no affirmative duty by the police to search for an informant. Their only duty was to give defendant all the relevant information they had. A contention comparable to defendant's arose in *State v. Scott*, 508 S.W.2d 302[2] (Mo.App. 1974). There, a police detective had questioned defendant upon arrest and made notes of the inquiry, but by trial time the officer had lost the notes. Defendant sought production of the notes to cross examine the detective and objected to him testifying because the state did not produce the notes. In denying defendant's point we held: "The [trial] court could find a thorough search had been made for the missing notes and no ulterior motives were ascribed to the prosecution." So it is here. Absent a showing the state ever had the desired information it cannot be faulted for failing to produce it.

The state's obligation in such cases, based on numerous court decisions, is described in 76 A.L.R.2d 294, which we adopt: "In the absence of a showing that the prosecution connived to procure the absence of the informer, the duty to disclose his identify requires no more than that the prosecution make available to the defendant all its information as to the informer    . . . ." The record shows the state fulfilled that obligation and we deny defendant's first point relied on.

Defendant next contends the trial court erred by admitting into evidence two of the five envelopes containing the LSD allegedly sold by him. This, on the ground no complete chain of custody was established. Defendant contends that although the evidence envelopes were properly marked and included the police alias "James Doe," there was insufficient information to link the substance with defendant. He suggests the possibility that other purchases may have been made that day and accidentally been assigned the name James Doe. He also argues that there was an unexplained possession during the chain of custody; that since there was no testimony as to who received the evidence at the police laboratory, the clerk, who did not testify, may have received it.

■ Whether a chain of custody is reasonably established and thus an exhibit is relevant is a matter for the trial court to decide. Its ruling will not be overturned unless there was an abuse of discretion. *United States v. Brown*, 482 F.2d 1226 (8th Cir. 1973). The record shows no such abuse. The witnesses identified each exhibit as having been bought from defendant and testified there had been no alteration. The state need not show who possessed the evidence at all times. *State v. Day*, 506 S.W.2d 497[11] (Mo.App.1974). "It is sufficient if the evidence shows reasonable as-

surance that it was the same and in the same condition." *State v. Baines*, 394 S.W.2d 312[6, 7] (Mo.1965). The point relied on is denied.

■ Last, defendant contends his conviction on five counts violates his constitutional guarantee against double jeopardy. He argues that the indictment charges only one "offense of selling" LSD under § 195.200, Laws, 1975, because he allegedly sold to police in one continuous police-controlled transaction. Holding otherwise, defendant argues, would violate the policy against multiple punishment and would "interject an element of untrammeled discretion" because it would allow the police to repeat transactions and thus control the overall length of the sentence.

Defendant cites several federal cases holding that charging an accused with multiple offenses for what was essentially a single transaction is improper. One such case is *Bell v. United States*, 349 U.S. 81[2, 3], 75 S.Ct. 620, 99 L.Ed. 905 (1955) in which the court refused to permit the charging of separate violations of the Mann Act when the defendant had transported two women across state lines. The court did not, however, hold that charging separate violations would violate constitutional rights. The court said "Congress could no doubt make the simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman so transported. The question is: did it do so?" Thus, the issue was one of statutory construction, not constitutionally prohibited double jeopardy. No such statutory construction problem is at issue here.

Defendant also relies on *State v. Toombs*, 326 Mo. 981, 34 S.W.2d 61[2] (1930), a case reversing a conviction for stock fraud because defendant had been convicted of issuing similar certificates on the same day during the same issuance. The case is not in point because the facts in *Toombs* differ. There, the defendant had filled out and delivered three certificates in the course of a single transaction. Here, there were separate sales of LSD. In *Toombs*, the court acknowledged the distinction, holding ". . . there may be several distinct offenses committed in the course of the same general transaction, as, for example, separate and distinct sales of intoxicating liquor to the same or different persons in the same transaction, generally speaking, and in immediate succession; . . . ." Thus, *Toombs* holds that "distinct sales" in the "same transaction" even if in "immediate succession" may be prosecuted separately.[1] See also *State v. Salter*, 256 S.W. 1070[3, 4] (Mo.App.1923).

Defendant suggests that in making a series of purchases, there was vindictiveness in the police action. No such evidence appears in the record. Multiple sales do tend to confirm identification. Defendant made—and was convicted for—separate sales of LSD. We hold his right to avoid double jeopardy was not violated.

Judgment affirmed.

STEWART and RENDLEN, JJ., concur.

---

1. We note the trial court imposed concurrent sentences for the two sales made January 8, 1975 and also imposed concurrent sentences for the two sales made January 9, 1975.