[No. 1920.    March 16, 1917.]
## SPENCER v. GROSS, KELLY & CO. et al.

### SYLLABUS BY THE COURT.

1. Where a party to a contract is sued for breach thereof, and relies upon the alleged fact that he requested the other party to the contract to cease operating thereunder, and that such other party acquiesced in his request, the motive which

Spencer v. Gross, Kelly & Co. et al., 22 N. M. 426.

prompted such party to make such request is immaterial and irrelevant, and was properly excluded from the jury.     P. 431

2. ·Appellant cannot complain of instructions to the jury, which, although improperly stating an issue, were more favorable to him than they would have been had the real issue been presented.     P. 432

3. Exceptions to instructions must be brought to the attention of the trial court before, or at the time, they are given to the jury, in order that the trial court may be able to correct any error therein,- and exceptions to instructions taken after verdict is returned will not be considered.     P. 433

4. Exceptions to instructions which fail to point out the alleged error therein will not be considered.     P. 433

5. In suits for breach of contract for personal services, where the employer alleges that plaintiff was otherwise employed during the term of the original contract, or could have secured such employment, the burden is upon the defendant to prove such facts.     P. 434

6. On a breach of contract for a specific undertaking the measure of damages is the difference between the contract price and the cost to the plaintiff of doing the work.     P. 434

Appeal from District Court, Bernalillo County; Raynolds, Judge.

Action by Benjamin B. Spencer against Gross Kelly & Co. and Richard Dunn and Edward B. Wheeler, co-partners, trading under the name of the Mora Timber Company, with counterclaim by defendants. Judgment for plaintiff, and defendants appeal. Affirmed.

E. W. Dobson of Albuquerque, Reed Holloman of San-Fe, and C. A. Spiess of Las Vegas, for appellants.

Rule of damages where one party prevents another from performing contract.

3 Elliott on Contracts, Sec. 149; W. U. Tel. Co. v. Long-well, 21 Pac. (N. M.) 339.

MARRON & WOOD of Albuquerque and E. R. Wright of Santa Fe for appellee.

## OPINION OF THE COURT.

ROBERTS, J.    This case arose out of an alleged breach of contract entered into between appellee and appellant, Mora Timber Company, a co-partnership composed of Gross Kelly & Co., a corporation, Richard Dunn, and Edward B. Wheeler, which contract was entered into on the 27th day of June, 1907.   Under the contract appellee was to cut all standing timber measuring fourteen inches in diameter inside the bark at the stump on the west half of section 1 and on section 2 in township 4 north, range 5 then owned by the appellants, and to deliver the same to his mill, and there saw it into lumber, and he was to be paid for such work a stipulated sum per thousand feet.    The contract contained the following provision:

"It is further agreed and understood, by and between the said parties, that should the cutting of the said timber on said west half of Sec. 1 and on said Sec. 2 be enjoined by legal process the said party of the first part will not claim damages on account of such suspension of said work from the said party of the second part."

Appellee was also to cut and deliver certain lumber from timber upon his own land, and the complaint in this action alleged, in substance, that the plaintiff had cut and delivered lumber from his own land under this contract to the amount of $369.95, which the defendants refused to pay for; that he had cut and tendered other such lumber to the value of $1,943.50, which defendant refused to accept; that he had to remove and stack this latter when defendant refused to do so, at a cost to him of $1,150.49; and that he had been at all times ready and willing to cut the timber on sections 1 and 2, but that the defendants forbade and refused to allow him to do so, to his damage in the sum of $15,000.

Spencer v. Gross, Kelly & Co. et al., 22 N. M. 426.

The original answer, in substance, admitted the contract; that the claim of $369.95 was owing and had not been paid; that they refused the $1,943.50 item because they "believed that a part of said. * * * lumber so cut as in said paragraph alleged was cut from lands not belonging to the plaintiff, * * * but for no other reason," and denied any indebtedness for moving the lumber.

The answer expressly admitted and alleged that on "December 26, 1907, the defendants notified said plaintiff to cease from cutting timber on defendants' said lands," but set up that in December, 1907, a suit was filed by the United States government against Gross Kelly & Co. and others, wherein it was sought to enjoin them from cutting the timber on the said sections; that an order requiring them to show cause why a temporary injunction should not be granted had been made by the court; and that they then entered into a verbal agreement with the United States Attorney that they would refrain from cutting any of this timber during the pendency of the action, and for this reason were unable to allow the plaintiff to cut the timber. A counterclaim for assigned notes was also alleged. To the last-mentioned defense the plaintiff demurred upon the grounds that the facts stated in the answer were not sufficient to amount to being "enjoined by legal process" as specified in the contract. This demurrer was sustained by the district court, and thereupon the defendants filed an amended answer, in which they set up the same facts contained in the original answer, but alleged in addition:

"That on the 26th day of December, 1917, the plaintiff herein was duly notified of such agreement·and stipulation by Richard Dunn, and that said plaintiff acquiesced in said agreement so made between the United States District Attorney and the said H. W. Kelly, one of the defendants herein, and made no claim whatever to any right to cut the said timber—and never demanded of defendants the right to cut timber therefrom after said date."

The plaintiff replied to this answer, among other things denying that he was ever notified of the agreement or stipulation set forth in the paragraph, or that he consented to, or acquiesced therein. Upon the issue, as thus framed,

the case was first tried, and the question was submitted to the jury, over plaintiff's objection, as to whether or not the plaintiff had been advised of the proceedings in the United States court and the agreement with the United States District Attorney as alleged and had acquiesced in that arrangement. A verdict having been found for the plaintiff, which, in effect, eliminated any right to recover damages under this issue, the plaintiff appealed to this court, which reversed the judgment (18 N. M. 191, 135 Pac. 77), upon the ground that there was no evidence in the record to warrant the court in submitting the question of acquiescence to the jury.

On the case being remanded to the district court, the defendants, by leave of the court, filed a second amended answer, in which they omitted the allegation that the plaintiff had been notified of the proceedings in the United States court, but instead, after setting up those proceedings, merely alleged that afterwards "the defendants requested the plaintiff not to cut the timber on section 1 and 2 mentioned in said contract, and said plaintiff acquiesced in said request and waived his right to cut the same under said contract." The plaintiff then moved to strike these allegations and exhibits "because it appears upon the face thereof that they do not amount to being enjoined by legal process as contemplated in the contract annexed to the complaint, and that it is not allowed nor claimed that the said matters, nor any of them, were communicated to the plaintiff by or on behalf of the defendants or were known to the plaintiff." This motion was sustained by the trial court. The plaintiff then replied, denying acquiescence in the defendant's request not to cut the timber, and raising other issues unnecessary to be considered here. The case was tried to the jury, which made the following findings of fact:

"(1) How much lumber of the quality of 'first common' and how much 'select and clear' sawed by the plaintiff from timber owned by him June 27, 1907, and left upon his mill-yard did the defendant fail and refuse to accept and pay for? Ans. 117,000 feet first common, and 4,000 feet select and clear.

"(2) What was the reasonable cost and expense to the plaintiff of moving lumber of the kind specified in question

No. 1 and stacking the same adjoining his millyard? Ans. $150.49.

"(3)   How much first common or' better lumber could have been cut from the pine timber about 14 inches in diameter at the stump on section 1 and 2 during 1908 and 1909? Ans. 1,423,675 feet.

"(4)   What was the reasonable cost per thousand feet to cut the timber on sections 1 and 2, deliver it at Spencer's Mill where then located, and cut into lumber as specified in the contract? Ans.   $7.

"(5)   Did the plaintiff ever inform the defendants or Dunn, or by his conduct or otherwise, lead them to believe that he would not insist or was not insisting upon his right to cut the timber on sections 1 and 2 as that right was given by the terms of the written contract? Ans. No."

The jury computed the amount of the appellee's damages, deducted the amount of his notes held by the appellants, and gave a general verdict for the appellee of $13,-794.60.

[1]   The first proposition urged by appellants upon which they rely for a reversal is that the lower court erred in sustaining appellee's motion to strike that portion of appellants' answer setting up the bringing of the suit by the government of the United States against Gross Kelly & Co. and H. W. Kelly, seeking to enjoin defendants from cutting timber off of the west half of section 1 and section 2, it being appellants' contention that they were entitled to set up the bringing of said suit, and to have offered evidence in support of what actually took place and occurred.   But in view of the fact that in the second amended answer filed by appellants after the reversal of the case on the former appeal there was no allegation that the proceedings in the United States court were ever communicated to the appellee, or that he had any knowledge thereof, such matters were wholly irrelevant, and the court properly sustained appellee's motion to strike the same from the answer.

It is not contended here that the filing of this suit and the agreement entered into with the United States Attorney amounted to "being enjoined by legal process."   In their amended answer appellants were relying upon the fact that they had requested appellee to desist from cutting timber, and that he had acquiesced in the request. The

motive prompting appellants to make the request could have no bearing upon the issue presented, and might, as appellee contends, have confused the jury had these allegations been permitted to remain in the amended answer. It was decided on the first appeal that the appellee could not be held to have acquiesced in any state of facts, unless it was alleged and proved that such facts were communcated and known to him. Likewise, no error was committed by the court in excluding, as evidence, the. papers in the suit filed by the government against Gross Kelly & Co. and H. W. Kelly, which led to the agreement between Mr. Kelly and the United States Attorney, or the proffered evidence to cut no more timber until after final hearing in said suit, because, as held upon the former appeal, such agreement did not amount to being "enjoined by legal process."

Appellant next relies upon the alleged error of the court in giving to the jury instructions numbered 7 and 8, which read as follows:

"(7)   You are instructed that the burden is upon the defendant to satisfy you by a preponderance of the evidence that the plaintiff acquiesced in the statements of the defendant as to a condition of affairs then existing which prevented them from allowing that timber to be cut."

"(8)   If, on the other hand, you should find that the plaintiff did not acquiesce in the statements of the defendant as to a condition of affairs then existing which prevented them from allowing the timber upon said sections 1 and 2 to be cut, you will find for the plaintiff upon this issue."

[2]   Appellants' objection to these instructions is to that portion of each instruction relative to the acquiescence of the plaintiff "in the statements of the defendant as to the condition of affairs then existing which prevented them from allowing that timber to be cut." The court should have used language which more clearly indicated the issue joined between the parties, which was as to whether or not the appellee had acquiesced in appellants' request to cease cutting the timber; but we fail to see how the use of the language employed by the court could be prejudicial to appellants. In fact, it was more favor-

able to appellants, if anything, than the properly employed words would have been.

[**3, 4**]    Even were the instructions erroneous, however, they would not be subject to review here, because no exception to the instructions was taken at or before the time they were given, although counsel for appellant specially requested that any exceptions be then stated.    The record in this regard shows as follows:

"At the conclusion of the case and just prior to the reading of the instructions to the jury, the defendants' attorney asked the court for time to file exceptions to the instructions about to be read.    Mr. Wood suggested or asked that exceptions to instructions should be taken at this time.    Mr. Mann of defendants' counsel said he had fully argued his position and had called the court's attention to his point of view, and did not care to argue further, and objected to the instructions, and stated he would file exceptions to same.    The court then stated that he had the instructions in the form he was going to give them to the jury, and would follow his rule and practice and allow the defendants twenty-four hours to file their exceptions.    That pursuant to the foregoing permission the defendants on October 2, 1915, filed with the clerk of the court the written exceptions which appear immediately following the instructions at pages 583 to 586, inclusive, on this bill. but except as above stated the said exceptions were not called to the court's attention before the jury had returned their verdict."

The object of taking exceptions to instructions prior to the reading of the same to the jury is for the purpose of enabling the court to correct any error therein, and thereby avoid the necessity of a new trial or appeal.    In the case of Territory v. Lobato, 17 N. M. 666, 134 Pac. 222, this court held that:

Exceptions to instructions must be brought to the attention of the court before or at the time they are given to enable the court to correct them before verdict.

The present case affords an apt illustration of the wisdom of requiring the objections or exceptions to be stated in advance of the giving of the instructions to the jury, for. had appellant pointed out the ground of his objection as later stated in the exceptions filed after the return of the verdict. doubtless the instructions would have been corrected conformably to the real issue in the case, which,

as stated, was whether appellants had requested appellee to cease cutting, which was acquiesced in by him. See, also, State v. Chenault, 20 N. M. 181, 147 Pac. 283. In the case of James v. Hood, 19 N. M. 234, 142 Pac. 162, this court held that it was the duty of counsel to point out specifically the instruction excepted to and the ground upon which the exception is based in advance of the reading of the instruction to the jury in order to avoid the expense and trouble of a second trial. For the reasons stated, we are required to hold that instructions 7 and 8 are not before the court for review.

Appellant also argues that instruction No. 14, given by the court of its own motion, was erroneous. This instruction likewise cannot be considered by the court because not excepted to prior to its having been given to the jury; and, further, the exceptions filed to this instruction the next day after it was given to the jury fail to point out the vice therein, and falls clearly within the rule announced in the case of James v. Hood, supra. The appellant in the court below simply excepted to the giving of said instruction, but failed to point out wherein such instruction was erroneous.

[**5, 6**] Complaint is next made of the refusal of the court to give the following instruction requested by appellant:

"In case you determine that the defendant violated the contract relative to the cutting of the timber on the land of the Mora Timber Company, in question, yet if the plaintiff continued to operate his mill during the period of the life of the contract, it is your duty to deduct from any damages due on this item of damages, the profit he made, or could have made, during that period, and the burden is upon the plaintiff to show what profit he made, or could have made during that period of time."

The court properly refused this instruction for two reasons: First, it places the burden upon the plaintiff to show what profit he made or could have made during the period of time it would have required him to complete the contract. In support of the tendered instruction appellants cite the case of Western Union Telegraph Co. v.

Longwill, 5 N. M. 308, 21 Pac. 339. If the case relied upon furnishes support for appellants' contention, it will not be followed by this court, for it is well settled that in suits for breach of contract for personal services where the employer alleges that the plaintiff was otherwise employed during the term of the original contract, or could have secured such employment, the burden is upon the defendant to prove such facts. In the case of Costigan v. Mohawk & Hudson R. R. Co., 2 Denio (N. Y.) 609, 43 Am. Dec. 758, where the same proposition was advanced, the court said:

"But first of all the defense set up should be proved by the one who sets it up. He seeks to be benefited by a particular matter of fact, and he should therefore prove the matter alleged by him. The rule requires him to prove an affirmative fact, whereas the opposite rule would call upon the plaintiff to prove a negative, and therefore the proof should come from the defendant. He is the wrongdoer, and presumptions, between him and the person wronged, should be made in favor of the latter. For this reason therefore the onus must in all such cases be upon the defendant."

In the case of King v. Steiren, 44 Pa. 100, 84 Am. Dec. 419, it was held that where a clerk, agent, laborer, or domestic servant, under a contract for hire for a year or shorter determinative period, was improperly dismissed before the term of service expired he was entitled to recover for the whole term, unless the employer, on whom the burden of proof lies, could show either that he was actually engaged in other profitable employment during the term, or that such employment was offered to him and rejected.

In a note to the case of Howay v. Going-Northrup Co., 6 L. R. A. (N. S.) 1, at page 108, will be found collected many cases, and from which it will be seen that the overwhelming weight of authority is to the effect that if the employer desires to mitigate the damage by showing that the employe had employment, or could have obtained employment by reasonable diligence, during the whole or any portion of the contract period, the burden rests upon him to establish such fact. This being true, it would follow that the court committed no error in refusing to give the requested instruction.

But there is another and added reason supporting the action of the court, which is that the contract in question was not one for personal services within the rule that damages for breach thereof may be mitigated by earnings of the employe in other employment. Here the appellee contracted to saw and cut into lumber at his mill, certain timber. There was no element in the contract indicating that the employment was personal in its character, or that appellant could not have had the labor performed by others. Such being true, it was not a case for the application of the rule that where a servant is wrongfully discharged before the expiration of his term of service evidence could be introduced in mitigation of damages of what he earned or might have earned during that period. In a note appended to the case of Harness v. Kentucky Fluor Spar Co.; Ann. Cas. 1914A, 203, the author of the note says:

"The question as to what constitutes a contract for personal services arises usually in connection with the determination of the measure of damages in case of breach of contract. Here a distinction is marked between contracts for the hire of clerks, agents, laborers and domestic servants for a year or shorter determinative periods and contracts for the performance of some specific work or undertaking. In a suit for breach of the former species of contract the employer may reduce recovery by so much as the employe earned or could by the exercise of ordinary diligence have earned in other employment of the same kind in the interim between the breach and the termination of the contract period. On a breach of contract for a specific undertaking, on the other hand, the measure of damages is the difference between the contract price and the cost to the plaintiff of doing the work. This distinction is clearly set forth in many of the numerous cases cited and reviewed in the reported cases. In addition to the cases therein cited see the following: Hale v. Trout, 35 Cal. 229; Perry v. Simpson Waterproof Mfg. Co., 37 Conn. 520; Cox v. Beardon, 84 Ga. 304, 10 S. E. 627, 20 Am. St. Rep. 359; Ricks v. Yates, 5 Ind. 115; Devlin v. New York, 63 N. Y. 8; Shannon v. Comstock, 21 Wend. (N. Y.) 457, 34 Am. Dec. 262; Levine v. Rosenschein, 134 App. Div. 157, 118 N. Y. Supp. 800; Simon v. Levinson, 126 N. Y. Supp. 659; King v. Steiren, 44 Pa. 99, 84 Am. Dec. 419; Richey v. Union Central L. Ins. Co., 140 Wis. 486, 122 N. W. 1030. See, also, the notes to Masterton v. Brooklyn, 42 Am. Dec. 38; Decamp v. Hewitt, 43 Am. Dec. 204, and Cox v Bearden, 20 Am. St. Rep. 359."

This appears to be the almost universal rule. See, also, note to the case of Wells v. National Life Association of

Hartford, 53 L. R. A. 1, page 108. In the case of Watson v. Gray's Harbor Brick Co., 3 Wash. 283, 28 Pac. 527, which was a suit instituted for breach of a contract for the driving of a well, the court said:

"There is a well-defined distinction drawn by all the authorities between contracts for hire, or for personal services, and the contract to do a specific act. In the former case, if the plaintiff gets employment at the same wages, it is plain that he is not damaged, and when he does not his damages are easily ascertained. In the latter species of contract, where the employer refuses to accept of the services, or to have the work contracted for performed, or prevents the employe from performing the same in any manner, the usual measure of damages, where the contract relates to the manufacture of an article, or the construction of a building, or the performance of some other specified act, is the difference between the price agreed to be paid and what it would have cost the employe to complete it, provided such cost would be less than the contract price. Field on Law of Damages, § 339. The duty to seek employment is dependent upon the original contract being one of employment or hire. It is not applicable to every contract. Sedgwick on Damages, § 208."

From the foregoing it is clearly apparent that no reversible error was committed by the trial court, hence the judgment will be affirmed; and it is so ordered.

HANNA, C. J., and PARKER, J., concur.