[No. 3627.   March 24, 1931.]

[On Rehearing Sept. 15, 1931.]

[Rehearing Waived Sept. 29, 1931.]

STATE v. ARMIJO et al.

[2 Pac. (2d) 1075.]

George R. Craig and Marron & Wood, all of Albuquerque, for appellants.

M. A. Otero, Jr., E. C. Warfel, and Quincy D. Adams, all of Santa Fe, for the State.

OPINION OF THE COURT

WATSON, J.

Carrie Adair Armijo, Luis Martinez, and Roy Gentry were jointly indicted for conspiracy to burglarize the Bernalillo county courthouse, and to steal therefrom a box containing $1,300 in money, both box and money the property of the state. They were also jointly indicted for larceny of said box and money. By agreement of the parties and by order of the court, the two causes were "consolidated for the purposes of trial." Gentry pleaded guilty and testified against the two others. The trial of Armijo and Martinez resulted in acquittal of larceny and conviction of conspiracy. From the judgment rendered on the latter verdict they have appealed.

Luis Martinez was in charge of the distribution of automobile license plates in Bernalillo county and of the collection of the moneys paid therefor. Mrs. Armijo was his assistant. The business was carried on in the office of the county treasurer in the courthouse. The moneys stolen were the proceeds of such collections and the box was the receptacle for such moneys.

The convicting evidence was the testimony of Gentry. He was the son of the courthouse janitor. He assisted his father in his work and carried the keys to the treasurer's office. He testified that on several occasions he had let appellants in to the treasurer's office when it was closed; that at 1 o'clock in the afternoon preceding the robbery he met Martinez in a corridor of the courthouse; that Martinez inquired if he wanted to make $100 and, on the witness' reply that he did, said that he wanted to get into the treasurer's office, that he was going to make a clean-up, that he was going to take the strong box out; that a little after 9 that evening the witness let appellants into the treasurer's office; that he found them waiting for him in the corridor; that they then told him they were going to carry the box out at 3:30; that they were going to push the safety latch on the door so that they could

go in and out as they pleased; that they wanted the witness to take the deputy sheriff (who would be in an office across the hall from the treasurer's office) to lunch at midnight, and to watch on the outside at 3:30 in the morning, and to let them know if anybody came up, and that the witness was to call them by telephone at 11:30 at the treasurer's office; that he called them at 11:30 and received the same instructions as before; that at 3:30 in the morning he was watching on the outside of the courthouse, and saw the box carried out by appellant Martinez and another man, Mrs. Armijo being with them but not helping to carry the box; that the three went to the rear of the courthouse; that he heard a car start up out there and then went to bed; that about 1 o'clock the next day he met Martinez in the corridor and asked him about the $100; that Martinez told him not to worry about "that hundred", and that if he mentioned anything about it he would kill him; that about 12 o'clock that night he saw a car containing Martinez and Mrs. Armijo; that he stopped them and asked them about the hundred dollars; that they told him not to worry about the hundred dollars, to let it go for a couple of months until everything should be quiet, and if he mentioned anything they would kill him; that at this time he saw the strong box in the rear of the car; and that appellants told him they were going to Santa Fe.

Appellants argue the insufficiency of the evidence from two viewpoints. They contend: First, that the evidence is insufficient to support conviction for either crime with which appellants were charged. Second, that even if it is sufficient to support a conviction of either or both charges, it is insufficient to support a conviction of conspiracy in view of the acquittal of larceny.

Appellants do not question that the testimony above recited, if believed, is conclusive of guilt of both offenses. Their point is that it is not worthy of belief. Gentry was an accessory. His story in the light of circumstances existing is not very convincing. He made two so-called confessions. Then at the preliminary hearing he repudiated both and declared that appellants were innocent. Cross-examination at the trial and the various ver-

sions he gave cast great doubt upon his veracity and upon the truth of his testimony. But these matters do not legally affect its substantial character. It was for the jury to weigh it and decide the question. The uncorroborated testimony of an accomplice will sustain a conviction though the witness was discredited by having a criminal record. State v. Kidd, 34 N. M. 84, 278 P. 214. Whether a witness has been so impeached as to render his testimony unworthy of belief is a question for the jury. Las Cruces Motor Co. v. Conover, 35 N. M. 15, 288 P. 1065. We are unable, therefore, to sustain appellants in their first contention.

The second contention is more troublesome. Their proposition is that if Gentry told the truth appellants were guilty of larceny; that the jury found them not guilty of this offense, and hence found that Gentry did not tell the truth; and that if Gentry did not tell the truth, there is no substantial evidence that appellants were guilty of conspiracy.. As a criticism of the combined results of the two verdicts, the argument has considerable force. Is it such an argument as a court of review may properly entertain?

It is contended that the two verdicts are utterly inconsistent; that the acquittal of larceny nullifies the conviction of conspiracy so that judgment upon the latter should have been arrested, or at least that the two verdicts nullify each other so that mistrial should be held to have resulted.

There is no inherent inconsistency in the verdicts resulting from the nature of the offenses. It is quite possible for appellants to have conspired to commit, without having committed, the larceny. So such cases as State v. Headrick, 179 Mo. 300, 78 S. W. 630 and State v. Akers, 278 Mo. 368, 213 S. W. 424, if in accord with sound principle, are not here in point. Nor are former jeopardy cases such as In re Resler, 115 Neb. 335, 212 N. W. 765, and Davis v. People, 22 Colo. 1, 43 P. 122, in point.

The claimed inconsistency is based upon the testimony in the particular case; it being contended that reasonable

minds could not so view such testimony as to reach the two conclusions which the jury arrived at. Assuming that to be logically true, the question remains whether, in reviewing the conspiracy verdict for sufficiency of the evidence, we are at all concerned, or may properly concern ourselves, with the acquittal of larceny.

There is conflict of authority upon the question, and this conflict is particularly pronounced in the federal courts. Appellants cite and rely upon Rosenthal v. U. S. (C. C. A.) 276 F. 714; Hohenadel Brewing Co. v. U. S. (C. C. A.) 295 F. 489; Peru v. United States (C. C. A.) 4 F. (2d) 881; Murphy v. United States (C. C. A.) 18 F. (2d) 509, 511; Boyle v. United States (C. C. A.) 22 F. (2d) 547, 548; and Speiller v. United States (C. C. A.) 31 F. (2d) 682, decisions emanating from the third, eighth and ninth circuits. The result of these decisions is that where two or more verdicts are rendered in a case the courts will not sustain the convicting verdict unless able, from the evidence, to reconcile it with the acquitting verdict. In the Peru Case a conviction of maintaining a nuisance was set aside when there was no evidence to support it except certain sales and possessions specified in other counts of the indictment upon which there had been acquittals. Such also was the decision in the Murphy Case. Judge Van Valkenburgh, writing the opinion, notices the conflict in authority and mentions the decisions from the second, sixth, and seventh circuits. He summarizes the contrary view as follows:

"This conclusion is based upon the view that 'it is within the power of the jury, though not within its right, to acquit an accused in defiance of law and reason, and however plain his guilt,' and upon the further consideration generally recognized, where justified by the facts and the nature of the offense charged, that 'a verdict that is apparently inconsistent affords no basis for a reversal of a judgment predicated thereon, when the evidence is sufficient to support either of two separate offenses'."

In the Boyle Case, Judge Booth, writing the opinion, thus distinguishes the conflicting holdings:

"On the one hand * * * where a jury convicts upon one count and acquits upon another, the conviction will stand, though there is no rational way to reconcile the two conflicting conclusions. * * * On the other hand, * * * the conviction will not be allowed to stand, unless the verdict of conviction is supported by evidence

other than the facts pleaded in support of the counts upon which acquittal has been had."

State decisions cited by appellants and lending some support to their contention are Smith v. State, 38 Ga. App. 366, 143 S. E. 925, and People v. Haupt, 221 App. Div. 485, 224 N. Y. S. 163. The holding in the latter case was disapproved, however, by the Court of Appeals. People v. Haupt, 247 N. Y. 369, 160 N. E. 643. Some others are to be found.

But, opposed to their contention, we find a number of state decisions. State v. Daly, 77 Mont. 387, 250 P. 976; State v. Stewart, 120 Kan. 516, 243 P. 1057; Sihick v. State, 89 Ind. App. 132, 166 N. E. 14; State v. Ridge (Mo. App.) 275 S. W. 59; Browning v. State, 120 Ohio St. 62, 165 N. E. 566; Commonwealth v. Donato, 87 Pa. Super. Ct. 285; State v. Brown, 198 N. C. 41, 150 S. E. 635.

Our research has perhaps not been exhaustive, but we are impressed that these decisions, with those of the second, sixth, and seventh circuits referred to above, constitute a weight of authority.

Moreover, it is not easy in this jurisdiction, where so much weight is given to a verdict rendered upon proper evidence and correct instructions, to adopt the doctrine urged by appellants. To do so would be to yield general principles of long recognition. As triers of facts, we might give great weight to appellants' present contention. But, reviewing for errors of law, we may not say that the Gentry story must be accepted or rejected in toto. Some parts were perhaps less improbable than others. Nor is it possible for us to say what parts of it, if any, the jury has rejected. It is our business to review the verdict of conviction. The verdict of acquittal is beyond our control. For it the jury is answerable only to conscience. It is entirely practicable to determine whether the conviction is supported by substantial evidence. We can only speculate as to the reason for the verdict of acquittal. The two verdicts not being inconsistent in law, that they are inconsistent in fact could be determined only by going farther in analysis of the evidence, and in

weighing it, than we are accustomed to go. As pointed out in State v. Akers, 278 Mo. 368, 213 S. W. 424, a rule should work both ways. There is no more reason for holding, as that court had previously held, that an inconsistency destroys the verdict of conviction, than for holding that it destroys the verdict of acquittal. The Missouri Supreme Court in that case considered that the situation called for a new trial. We do not think so. The one verdict standing alone is good. It should not be overcome by another verdict over which we have no control, cannot appraise, and which may have been actuated by any one of a dozen reasons which, if fathomed, would not detract from the former. In State v. Ridge, supra, a Missouri Court of Appeals seems to have accepted this result. Should we here conclude otherwise, verdicts of guilty, however convincing the evidence, must hereafter yield to contemporaneous verdicts of acquittal, however irrational.

It has been deemed best in this case to dispose of these contentions on their merits. But there is another ground upon which the judgment must be sustained. The trial court expressly charged the jury that it might find either or both of appellants guilty or not guilty of larceny, and might find them both either guilty or not guilty of conspiracy. These instructions were not challenged in any manner. They are the law of the case. State v. Wallis, 34 N. M. 454, 283 P. 906. The verdicts rendered are within the instructions and the law of the case. If inconsistent, they are not legally erroneous, and if erroneous, the error was invited by appellants' acquiescence in the law as stated by the court.

Appellants recognize that they are confronted with this obstacle, but they invoke the inherent power of this court to correct fundamental error and to prevent a miscarriage of justice. State v. Garcia, 19 N. M. 414, 143 P. 1012. They excuse their failure to ask for instructions by claiming that it was then inconceivable that two such verdicts should be arrived at, as it is now incomprehensible how they were arrived at. If it be true that the evidence in the case would not admit of the two verdicts which have actually been rendered, it was as apparent at the close of

the case as it is now, and it was the duty of counsel to point out to the court the error into which it was falling. We may accept counsel's explanation of the failure without admitting its sufficiency. They are in the situation of having speculated upon the verdicts. If we were at liberty to speculate concerning them, we might consider whether under different instructions there would not have been a conviction of the larceny. It may well be that this jury, under all the circumstances, considered that one punishment would meet the ends of justice. While this was not what the law required of the jury, it is what the law has no means of preventing. Appellants have acquiesced in the instructions. They cannot now complain of the result. Manifestly the situation is not one which calls for the exercise of this court's inherent power as defined and limited in State v. Garcia, supra.

It is urged that

"several occurrences during the trial were of such a nature that even if not individually sufficient or so presented in the record as to constitute reversible error, yet collectively constitute such a serious infringement on the defendants' rights, as to require a new trial in the interest of justice."

But we find no merit in the contention.

The point is submitted that the court erred in overruling a demurrer. We deem it abandoned for failure to argue. Some general principles are stated upon authority. But it is not indicated that they have any bearing upon the present indictment.

The judgment must be affirmed. It is so ordered.

BICKLEY, C. J., and SADLER, J., concur.

PARKER and HUDSPETH, JJ., did not participate.

### ON MOTION FOR REHEARING

### OPINION OF THE COURT

WATSON, J.

While several points are stated in the motion for rehearing, that most strongly urged in argument is that the verdict and judgment are not supported by substan-

tial evidence. For the proper consideration of that proposition as now presented, some facts should be stated additional to those originally set forth.

The robbery occurred on the night of December 18th and 19th. On January 10th Gentry was arrested and, after a lengthy session with the officers, wrote out his first so-called confession. In it he stated that he did not know that appellants were planning to rob the courthouse until he saw them coming out the side door with the box, and that he had wanted to reveal what he knew but was afraid that appellants would "get" him.

On January 13th he wrote out his second confession. In this he admitted participation to the extent of getting the deputy sheriff out of the way at 12:30 and of acting as lookout at 3:30.

On January 16th he was given a preliminary examination. He did not on that occasion, so far as we learn from the record, withdraw any part of the confessions implicating himself. But, in response to questions designed to develop the facts as he had already written them out, he answered:

"These two defendants and the rest of them are not guilty. They are innocent."

He was then questioned by the court thus:

"What is your idea here? You are not going to testify to anything? Is that the idea?"

He answered:

"Yes, sir. They are innocent."

On January 18th he stated to the superintendent of the penitentiary, who was making some investigation of the case:

"I didn't know anything about the robbery till dad came over to Ward's store and told me about it. I was in the basement at the time."

The trial began April 3d, and Gentry there testified as stated in the original opinion. He also testified that he had practically no acquaintance with appellants and

that he had declared their innocence at the preliminary examination because afraid that they would kill him.

Upon this evidence, and it alone, the verdict must stand or fall. There has been some claim that an audit procured by the state, but introduced in evidence by the defense, is corroborative, as showing default in appellant's accounts with the state, and as furnishing a motive to abstract the box with supposed contents. The theory fails entirely. The audit shows on its face that there was no shortage. Theft remains the only apparent motive for the crime.

Ordinarily, when an eyewitness has testified to the crime and has identified the accused, an appellate court is powerless to interfere with a verdict of guilty. The rule is not varied by the fact that the witness was an accomplice. It is not varied by the fact that he stands impeached. It is not unusual for true confessions to follow false denials, nor for a participant in a crime to abandon an early determination to protect his associates. These are elements of weakness in evidence which must be passed upon by the triers of the facts.

But these are not the only infirmities here to be considered. Gentry's story in its final form is inherently improbable. It is most unlikely that appellants, contemplating this crime, would have taken a practical stranger into their confidence and service. Certainly, if his services had been indispensable, they would have approached him with more caution. It is unbelievable that these appellants or the guilty parties, whoever they may be, had the loot plainly visible in an automobile, twenty-four hours later, in front of the very courthouse from which they had stolen it. If, as Gentry says, appellants had gained admission to the office in the early evening and were leaving the door unlocked so that they could come and go, and planned to remove the box at 3:30, their insistence that the deputy sheriff be removed from the scene at 12:30, though constantly reiterated by Gentry as an important move in the game, is utterly without reason or explanation.

Counsel, analyzing the evidence much more closely than we can here indicate, impressively argue that Gentry has attempted to fit appellants into parts played by others; that he was indeed to play the part he says he played; that he was to take the deputy sheriff to lunch at midnight because the robbery was planned for that hour; that it was interrupted by events in the courthouse, and carried out at the later hour; and that, in attempting to change the characters in the plot and action, he has invented and introduced some facts plainly false and inconsistent with such part of his narration as is true.

It is not for us to adopt a theory of this crime. Our business is to determine whether there is substantial evidence that appellants are guilty of it. But we more readily apprehend the inherent improbability of Gentry's story as a whole, when we perceive that, with other characters in the parts assigned to appellants and omitting some embellishment, it would be credible. It is highly persuasive of an attempt to shield the guilty at the expense of the innocent.

The inherent improbability of Gentry's story we think turns the scales against its substantiality; its sufficiency to support the verdict. If it were consistent and had the ring or any stamp of truth, established principles of review might perhaps compel us to accept it, though it comes from the lips of a witness interested as someone's accomplice; interested in the result to himself and to others; actuated by fear of vengeance; a confessed perjurer; uncorroborated by word or circumstance. It taxes the detached judicial attitude to accept any testimony from such a source. But when the evidence itself is incredible, and in parts plainly fabricated, and, as a whole, convinces the mind that the truth is still suppressed, the point is reached, as it seems to us, where an appellate court should intervene. The verdict rests upon evidence which fails to meet any test of truth. We consider it unsubstantial. In thus holding we do not deviate from anything said in the original opinion or depart from any principle established by former decisions of this court.

544

We have come slowly and late to this conclusion. On the former consideration of this case we were not impressed that it differed from the many others in which evidence has been held substantial. We were also confronted with the fact that at the trial there was no motion for a directed verdict or other challenge of the sufficiency of the evidence. Undoubtedly appellants thus lost the right to urge the contention here. But this court was not deprived of the power or relieved of the duty to prevent a plain miscarriage of justice. State v. Garcia (Rehearing) 19 N. M. 420, 143 P. 1012. Proper adherence to principle requires that the power be guardedly exercised and that the duty be performed only in a case where it is plainly presented. But we are not here dealing with "strictly legal, technical or unsubstantial claims." The right of an accused person to the presumption of innocence is fundamental; none more so. The preservation of that right is intrusted primarily to the jury. But it falls upon the judges, when convinced that, by convicting without substantial evidence, the jury has failed to perform its proper function.

The judgment will accordingly be reversed. The cause will be remanded, with direction to grant appellants a new trial. It is so ordered.

BICKLEY, C. J., and SADLER, J., concur.

PARKER and HUDSPETH, JJ., did not participate.