JEFFRA v. UNITED STATES.

PHILLIPS v. UNITED STATES.

Nos. 5766, 5767.

Circuit Court of Appeals.
Fourth Circuit.
Aug. 7, 1948.

Thomas J. Kenney, of Baltimore, Md.
(Avrum K. Rifman and Kenney & Kaiser, all of Baltimore, Md., on the brief), for appellant Jeffra.

Wilfred T. McQuaid, of Baltimore, Md., for appellant Phillips.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for appellee.

Before PARKER and DOBIE, Circuit Judges, and BARKSDALE, District Judge.

DOBIE, Circuit Judge.

This appeal brings before us again efforts of officials of the American Ship Cleaning Company to shelter certain devotees of pugilism in Baltimore from the cold wind of the draft. See Cataneo and Magliano v. United States, 4 Cir., 167 F.2d 820. Harry I. Jeffra and Nathan E. Phillips were charged in the first count of an indictment with violation of the Selective Service Act of 1940, 50 U.S.C.A.Appendix, § 311, in that, for the purpose of causing the deferment of Jeffra from the draft, they knowingly made and filed with Jeffra's local draft board, a false affidavit "stating that the said Harry Ignatius Jeffra was a full time laborer employed by the American Ship Cleaning Company." The two defendants were tried jointly before a jury in the United States District Court for the District of Maryland, found guilty, and sentenced.

Both defendants question the sufficiency of the evidence upon which they were convicted and we accordingly summarize it briefly. Harry Jeffra was an outstanding prize-fighter and on separate occasions had held both the bantamweight and featherweight championships of the world. In June, 1942, he announced his retirement from the ring and this announcement was given wide publicity. At that time his draft classification was 3-A because of his dependents—a wife and three children. On January 1, 1943, he took a position with the Bethlehem-Fairfield Shipyards as a counter of the piece work done by welders. In June, 1943, Jeffra began a "come-back" in professional boxing and thenceforth engaged in frequent bouts (again occasioning wide publicity) which necessitated prolonged absences from his job.

On October 30, 1943, Bethlehem-Fairfield requested Jeffra's deferment from the draft

and filed with his local draft board Form 42-A, an affidavit which described Jeffra's work at the shipyard and listed eighteen days as time lost from his work during the past three months with the permission of his foreman. On the strength of this affidavit, Jeffra was classified as 2-B, the classification of registrants engaged directly in the war effort. Another Form 42-A covering Jeffra was filed by Bethlehem-Fairfield in May, 1944, and as a result, his classification as 2-B was renewed on May 15, 1944. This second Form 42-A stated that during January, February and March, 1944, Jeffra had lost five days from work. Actually he had been absent, with the permission of his superiors, a total of 49 days in order to engage in boxing bouts.

On September 21, 1944, Jeffra was released by Bethlehem-Fairfield. He then went to work as a laborer for the American Ship Cleaning Company on October 2, 1944. Jeffra stated that he had known Cataneo, the President of American Ship Cleaning Company, as a gambler around the boxing game and that Cataneo had offered him some money after he won the featherweight championship, which money he refused. Cataneo then said that if at any time he could do Jeffra a favor, Jeffra should come to Cataneo.

At Jeffra's request, on October 24, 1944, Form 42-B, "Occupational Certification" was executed. This form certified that Jeffra was employed by the American Ship Cleaning Company as a laborer, and in answer to a printed question on the form, "Is Registrant employed full time?" the word "Yes" was placed. This form was executed and certified as true by Jeffra's codefendant, Nathan E. Phillips, in his capacity of public relations manager of the American Ship Cleaning Company. As a result, on October 30, 1944, Jeffra's classification was changed to Class 2-A, occupational deferment in support of the war effort.

Phillips, in addition to being public relations manager, was also the personnel manager of the American Ship Cleaning Company. His duties included taking care of priorities for employees, such as tires and gasoline, obtaining the necessary coupons therefor, making out numerous government forms and the handling of draft deferments. Phillips, moreover, was connected with professional prize-fighting. He backed fighters and, at the time of Jeffra's employment, was the assistant matchmaker of the Arena Athletic Club, one of the largest prize-fighting clubs in Baltimore. Since 1945, Phillips has been matchmaker of this club.

Phillips testified that in response to Jeffra's request to notify his draft board, he "got out one of the forms and asked him (Jeffra) questions that the form required you to find out." Phillips also testified that he marked Form 42-B "Yes" in response to the question "Is the Registrant employed full time?"

Within the next day or two, Jeffra obtained permission from Cataneo to take time off from his war work to box. Cataneo instructed Jeffra to tell Phillips that he was taking off and to report to Phillips upon his return. Thereafter, Jeffra engaged in seven boxing contests for each of which he was permissively absent from work to train, fight, and recuperate. Permission to be away was given to him by either Cataneo or Phillips. During this period, approximately three-fourths of Jeffra's income was derived from his boxing activities. He engaged in boxing matches in Providence, New York City, Baltimore, Minneapolis, Cleveland and Boston, and in approximately eight months he was absent 118 days from the job which was considered essential to the war effort.

We think the evidence is amply sufficient to sustain the verdict of the jury. A matchmaker of prize-fights has the task of arranging matches between fighters of relatively equal ability in order to present interesting spectacles to the sporting public. It is incredible that Phillips did not know that a former world champion and native of Baltimore was staging an active comeback and since July, 1943, had engaged in thirteen bouts, which meant long absences from his war work (actually 167 days out of approximately twelve months). Jeffra was in the midst of his come-back campaign when the occupational certificate was filed. The necessary inference is that he

had no intention of retiring from the ring at that time and intended to continue his boxing, with some interruptions due to his war work. It was Phillips' business to know what the boxers were doing and how they were doing. Yet, in the face of this knowledge, he certified that Jeffra was employed full time on war work.

Jeffra knew that in order to escape the draft he must be engaged in work essential to the war effort. He obviously could not be so engaged when he was off about half the time in furtherance of his own personal business and gains. At that time prize-fighting was Jeffra's main source of income. There was also evidence that he had obtained his release from Bethlehem-Fairfield because he was warned that he would have to stop losing time on account of his boxing.

There is every indication, and the jury was clearly justified in believing, that Jeffra was going to give to war work only the time left over from his prize-fighting activities, which were his primary concern. Nevertheless, he disclosed no such plans to his draft board; rather, he solicited and allowed a certification to be made that he was employed full time in an essential occupation in support of the war effort. Such action was a gross and willful failure to perform a duty required of him by the Selective Service Act, and the jury could well believe that Jeffra was equally guilty with Phillips as an aider and abettor in making the false statement whereby Jeffra was exempted from service in the armed forces of his country.

The defendant Phillips argues that since Jeffra had worked every working day from October 2, 1944, the day of his employment by the American Ship Cleaning Company, through October 25, 1944, Phillips' certification of October 24, 1944, that Jeffra was a full time employee was true. Such an argument overlooks reality and seeks to find its justification in technical subtleties. The falsity of this position is shown by the fact that beginning with October 26, 1944, two days after the filing of the occupational certificate, Jeffra was absent from his work for approximately one month in order to box in Providence and New York.

The fundamental question in this case is whether the employment of Jeffra was a real employment in the sense that Jeffra was to work conscientiously and full time upon work essential to the war effort or whether this employment was a device whereby Jeffra could avoid the draft and continue, with some interruptions, his pugilistic profession. There is no doubt but that the war work ran a poor second to the prize-fighting and was only engaged in when it did not interfere with the prize-fighting.

The purpose of filing the certificate was to give the draft board information from which it could determine what Jeffra's future status was to be. Because the Board believed that Jeffra was a full time employee and would so continue in the future, the Board granted him deferment. The necessary and only implication of the certification is that the status described therein will continue in the future. Otherwise such forms are worthless and can afford no basis upon which draft boards and similar bodies can act.

Jeffra was charged alone in two other counts of the indictment with failing to report his prize-fighting activities to his draft board and thus not performing a duty required of him by the Selective Service Act. The jury found him not guilty on these two counts. The Government, however, over the objection of both defendants, was permitted to introduce an affidavit filed with the local board, known as Form 42-A, dated April 9, 1945, upon which the deferment of Jeffra was continued. It was signed by Dominic Drecchio, Jeffra's superintendent, and the oath was taken before Phillips, who was a Notary Public. The Government stated that this affidavit was not offered against Phillips but only for the purpose of the second and third counts against Jeffra. Yet, on cross-examination, Phillips was thoroughly questioned as to this document.

█ No prejudicial error was thereby committed. The affidavit was clearly admissible against Jeffra. It stated that Jeffra was an assistant foreman, had entered his present job in March, 1942, and that he worked an average of fifty to fifty-

five hours per week. Actually, at the time of the filing of this affidavit, Jeffra was on a two weeks' absence to fight in Cleveland; there was no such position as assistant foreman, and Jeffra had entered his job at the American Ship Cleaning Company on October 2, 1944.

■ To determine whether Phillips was guilty of knowingly filing a false certificate, it was necessary to determine (1) whether the employment of Jeffra was a ruse whereby he could escape the draft and continue his prize-fighting, and (2) whether Phillips was aware of this trickery. The answering of these questions was the duty of the jury, and the affidavit of April 9, 1945, had probative value as to the actual facts of Jeffra's employment. As we said in the Cataneo case, 167 F.2d 820, at 824:

"The weight of this evidence, of course, was to be determined by the jury. When the status of a person or a state of affairs is proved to have existed at a particular time, the continuance of this status or relationship is presumed. * * *

"Courts are prone to admit relevant evidence of this kind in order to give the jury a complete overall picture of the entire situation. See Gormley v. United States, 4 Cir., 167 F.2d 454."

This affidavit of April 9, 1945, constituted a piece in the entire pattern of the episode. From a view of the whole transaction, it can be seen that Jeffra did not seriously interrupt his ring career, either prior to, or subsequent to, the filing of the various deferment forms. Phillips, as personnel manager of the American Ship Cleaning Company, was responsible for the preparation of deferment forms and for the truth of the statements contained therein. He was also prominent in Baltimore boxing circles and knew Jeffra's record. There was no one in a better position to know the actual status of Jeffra and his liability for service in the armed forces.

A careful survey of the whole record convinces us that both defendants had a fair trial, free of prejudicial error. The judgment of the lower court accordingly is affirmed in both cases.

Affirmed.