HARDEN *et al. v.* STATE.

(*Knoxville*, September Term, 1948.)

Opinion filed December 11, 1948.

Rehearing denied January 27, 1949.

18

G. W. CHAMLEE, G. W. CHAMLEE, JR., HARRY BERKE, and FRED HIXSON, all of Chattanooga, for plaintiffs in error.

NAT TIPTON, Assistant Attorney General, for the State.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

These ten plaintiffs in error appeal from a conviction of violating Chapter 89, Public Acts of 1947, Williams' Code Supplement, Section 11412.14, providing as follows:

"It shall be unlawful for any person, or persons, to display, exhibit, handle or use any poisonous or dangerous snake or reptile in such a manner as to endanger the life or health of any person."

Plaintiffs in error are members of a religious denomination known as "The Holiness Church." The services in this Church, in so far as the reading of Scripture and singing of hymns, etc., appear to be conducted as in

other Christian Churches. However, in the course of such worship those members who have been what they call "anointed" and have entered into the "Paragon of Truth" handle poisonous snakes and entwine them around their necks and bodies. This is considered to be the test and proof of the sincerity of their belief in and practice of their religious faith. They believe that the "anointed" will not be bitten by these snakes, or, if bitten, there will be no adverse physical effect. They also think that when non-believers or those weak in faith who may be attending these services witness this miracle, they may be really converted to Christianity, and obey its teachings. Hence, the handling of these snakes is one of their methods of evangelism. They insist that they are commanded to follow this practice by the 16th Chapter of Mark.

Those who "handle" the snakes are on a stage at one end of the Church. In the course of this ritual the snakes are passed after being so handled by one participant to another participant on the stage, and so on until all have so handled it. A rope is stretched across the front of the stage to prevent any of the audience from coming on it. Members of the Church are stationed at intervals along this rope to turn back any snake which might escape and crawl into the audience.

In the course of worship at this Church on August 9, 1947 these ten plaintiffs in error conducted the snake ritual in the manner above described with two snakes, one of which was a grown rattler. An audience was present. It is for this act that they were convicted of violating the statute forbidding the handling of a poisonous snake in such manner "as to endanger the life or health of any person".

It is common knowledge that a rattlesnake is poisonous. There is also here affirmative evidence of that fact. But it is said that these defendants should have been acquitted because it is not in evidence that the venom pouch of this particular rattlesnake had not been removed. A fact once shown to exist is presumed to continue until the contrary is shown. *Bolling* v. *Anderson*, 63 Tenn. 550; *Ehrlich* v. *Weber*, 114 Tenn. 711, 88 S. W. 188. It being an established fact that all rattlesnakes are poisonous, it must be presumed until the contrary is shown that this particular snake was not an exception. Moreover, in the handling of these poisonous snakes, as observed in the Kentucky case of *Lawson* v. *Commonwealth*, 291 Ky. 437, 164 S. W. (2d) 972, 973, "the very purpose sought to be accomplished by their handling was to demonstrate appellants' immunity, through faith, to the fatal consequences which would ensue to those who possessed it not."

The language of Chapter 89 is by necessary implication a legislative declaration that such handling of a poisonous snake is dangerous to life and health. It follows that these plaintiffs in error are guilty of the offense for which they are convicted unless, as insisted by them, (1) this statute "does not apply to religious services conducted in a Church," or, if it does so apply, (2) violates their freedom of religion guaranteed by both the Federal and State Constitutions.

The purpose of this statute, Chapter 89, Public Acts of 1947, is to the better protect the life and health of all people from exposure to the stated danger. There is nothing in the language of that statute from which it may be inferred that the Legislature intended to except any one from its provisions. Moreover, in the absence

of contrary inherent evidence, it would be very illogical to assume that the Legislature was not concerned with protecting people from this danger while they were participating in or attending religious services, but was so concerned at other times and places. The Court would usurp an exclusive prerogative of the Legislature if it should presume by decree to write such exception into the statute. So, this conviction must be upheld unless that freedom with reference to religion guaranteed to these convicted persons by either the Federal or State Constitution is violated by this statute under which they were convicted.

■ In the opinion of the Supreme Court of the United States in the case of *Cantwell* v. *Connecticut*, 310 U. S. 296, 60 S. Ct. 900, 903, 84 L. Ed. 1213, 128 A. L. R. 1352, the Court pointed out that the First Amendment to the Federal Constitution prevented Congress from enacting any legislation with reference to the establishment of religion or prohibiting its free exercise, and that the Fourteenth Amendment ''rendered the legislatures of the states as incompetent as Congress to enact such laws.'' It was then held in that case that the ''constitutional inhibition of legislation on the subject of religion has a double aspect . . . freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society''.

■■ In *Davis* v. *Beason*, 133 U. S. 333, 10 S. Ct. 299, 300, 33 L. Ed. 637, that Court, discussing the constitutional guarantees with reference to religion, said: ''It was never intended or supposed that the amendment could be invoked as a protection against legislation for the punishment of acts inimical to the peace, good order,

and morals of society." When an insistence similar to the one with which we are here concerned was being made in the case of *Reynolds* v. *United States*, 98 U. S. 145, 25 L. Ed. 244, the Court responded with the following statement appropriate here: "Suppose one believed that human sacrifices were a necessary part of religious worship, would it be seriously contended that the civil government under which he lived could not interfere to prevent a sacrifice?" In order, however, that those rights may not be infringed upon except in the reasonably necessary exercise by the state of its police power, the Supreme Court of the United States in the case of *West Virginia State Board of Education* v. *Barnette*, 319 U. S. 624, 639, 63 S. Ct. 1178, 1186, 87 L. Ed. 1628, 147 A. L. R. 674, held that the freedom of worship is "susceptible of restriction only to prevent grave and immediate danger to interests which the state may lawfully protect."

Chapter 89 of the 1947 Public Acts of Tennessee does not attempt to prevent any one from believing that the handling of these poisonous snakes in the manner mentioned is "a necessary part of religious worship." That statute does by necessary inference declare that such handling of poisonous snakes is dangerous to the life and health of people. Accordingly, it forbids that practice. This danger is, in effect, admitted by those who practice this ritual by their act in stretching a rope in front of the stage and by their placing of guards at intervals along this rope for the purpose of preventing injury or death to spectators.

It is apparent without proof that the precautions mentioned are inadequate. In this case it is shown by evidence that at least one person in the audience at this

particular church building crossed over the rope. Of course, such precautions do not at all protect those who are actually handling these poisonous snakes. Aside from the fact that such handling of a rattlesnake is commonly known to be fraught with danger, there is in this record affirmative evidence that at this particular church at least one worshiper was bitten by a poisonous snake and died from the effects thereof within a few hours.

Reasonable minds must agree that the aforementioned practice of so handling poisonous snakes as a part of the religious services of this Church is dangerous to the life and health of people. It is equally certain that this danger is grave and immediate when and wherever the practice is being indulged. Therefore, under the holdings of the United States Supreme Court, the Tennessee statute which forbids such a practice does not appear to violate those provisions of the Federal Constitution with reference to the individual's freedom of worship.

Kentucky enacted a statute almost identical with the Tennessee statute, except that it is more comprehensive than our act, because it does not limit the prohibition of so handling snakes at religious gatherings to those which are poisonous. Further, the Kentucky statute specifically confines its application to a "religious service or gathering," while our act is applicable to any situation, time or place, so long as the snake is poisonous, and is handled, etc. in a manner that is dangerous. In the well considered case of *Lawson* v. *Commonwealth*, heretofore referred to, (291 Ky. 437, 164 S. W. (2d) 972) the Kentucky Court of Appeals held that this statute did not offend either the Federal or the Kentucky Constitution, the latter providing, in so far as here pertinent, that "the civil rights, . . . of no person shall be taken

away, or in any wise diminished or enlarged, on account of his belief or disbelief of any religious tenet, dogma or teaching. No human authority shall, in any case whatever, control or interfere with the rights of conscience."

The provision of the Tennessee Constitution upon the question here presented is carried in Article I, Section 3. In so far as pertinent to our question, it is there provided that:—"All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience; . . . no human authority can, in any case whatever, control or interfere with the rights of conscience."

Conscience is that moral sense in man which dictates to him right and wrong. Vol 8, Words and Phrases, Perm. Ed. page 612. The statute under attack here does not undertake to interfere with the conscience of these defendants. They may believe without fear of any punishment that it is right to handle poisonous snakes while conducting religious services. But the right to practice that belief "is limited by other recognized powers, equally precious to mankind." *Jones* v. *City of Opelika,* 316 U. S. 584, 62 S. Ct. 1231, 1237, 86 L. Ed. 1691, 141 A. L. R. 514. One of those equally as precious rights is that of society's protection from a practice, religious or otherwise, which is dangerous to life and health.

For the reasons stated, the opinion of this Court is that Chapter 89, Tennessee Public Acts of 1947, does not violate the freedom of religion guarantees of either the Federal or State Constitution. Accordingly, the judgment convicting these defendants of a violation of that statute must be affirmed.

All concur.