408 P.2d 503

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Rebecca GUTIERREZ and Manuel D. Guerra, Defendants-Appellants.**

**No. 7766.**

Supreme Court of New Mexico.

Dec. 6, 1965.

---

Boston E. Witt, Atty. Gen., George Richard Schmitt, Thomas A. Donnelly, Asst. Attys. Gen., Sante Fe, for appellee.

McAtee, Toulouse, Marchiondo, Ruud & Gallagher, Mary C. Walters, Kaiser Michael, Jr., Albuquerque, for appellant Manuel Guerra.

Timothy P. Woolston, Albuquerque, for appellant Rebecca Gutierrez.

CARMODY, Chief Justice.

Appeal from a conviction and sentence on the charge of abortion. We affirm.

Summarizing the contentions made by appellants, it is claimed (1) that the trial court erred in refusing to instruct the jury that the victim's "boy friend" was an accomplice to the crime, therefore his testimony must have been corroborated; (2) that the court erred in failing to give an instruction on circumstantial evidence; (3) that the evidence was insufficient to connect Guerra with the crime; (4) that the verdict against Gutierrez is contrary to the court's instructions; and (5) that the evidence was insufficient to prove an essential element of pregnancy.

The facts, in their most favorable light to support the verdict, were that the victim, Barbara, and her "boy friend," John, believing that Barbara was pregnant, sought an abortion. John talked to Guerra at Guerra's drugstore in Albuquerque and Guerra agreed that "he could have it done." Thereupon, John handed Guerra $125.00 and Guerra handed him a sealed envelope with directions that he take it to an apartment in Albuquerque where he should "ask for Debbie." The couple proceeded to the apartment, where John handed Debbie the envelope given him by Guerra. Debbie immediately handed the envelope to Gutierrez, and Barbara and John were invited inside. Barbara and Gutierrez went behind curtains into a bedroom, where Gutierrez injected some liquid from a bulb syringe into the vagina of the victim. Six days later, John returned to Guerra and informed him that the abortion "didn't work." Guerra told him that "she would do it again." The following day, Barbara and John returned to the apartment, where substantially the

same procedure was followed as occurred on the first visit.

The trial court instructed the jury that the testimony of the woman on whom the abortion was allegedly performed must be corroborated by some other evidence. This instruction, although erroneous, became the law of the case and the jury was bound by it. State v. Wallis, 1929, 34 N.M. 454, 283 P. 906; State v. Armijo, 1931, 35 N.M. 533, 2 P.2d 1075. However, appellants assert that the trial court should have also instructed that the testimony of John and Debbie as accomplices must be corroborated. Actually, whether or not the two were accomplices is immaterial, but, assuming for the sake of argument that they were accomplices, the rule in this jurisdiction is that a defendant may be convicted on the uncorroborated testimony of an accomplice. Territory v. Kinney, 1884, 3 N.M. (Gild.) 143, 2 P. 357, on rehearing, reversed on other grounds, 3 N.M. (Gild.) 656, 9 P. 599; State v. Kidd, 1929, 34 N.M. 84, 278 P. 214; State v. Chitwood, 1930, 34 N.M. 505, 285 P. 499; State v. Armijo, supra; State v. Turnbow, 1960, 67 N.M. 241, 354 P.2d 533.

In State v. Armijo, supra, although, on rehearing, the court reversed its original decision as to substantial evidence, in so doing, we stated the following:

"* * * In thus holding we do not deviate from anything said in the original opinion or depart from any principle established by former decisions of this court."

Thus the statement in the original opinion, that the uncorroborated testimony of an accomplice will sustain a conviction though the witness was discredited by having a criminal record, was reiterated as the law of the State of New Mexico. In State v. Turnbow, supra (our most recent case dealing with this question of law), the rule was again applied.

The effect of the instruction that the court did give, requiring corroboration of the victim's testimony, was to place an additional burden on the state, Spencer v. Gross, Kelly & Co., 1917, 22 N.M. 426, 163 P. 1087, and it was an instruction to the defendant's advantage, Lujan v. McCuistion, 1951, 55 N.M. 275, 232 P.2d 478. Nevertheless, the verdict must stand the test of the instructions which were the unquestionable law of the case for the jury. State v. Reed, 1934, 39 N.M. 44, 39 P.2d 1005, 102 A.L.R. 995; and State v. Wallis, supra. Thus there must be in the record evidence to corroborate the testimony of the victim. Such corroboration must consist of "evidence tending to show that the defendant took part in the commission of the crime." Territory v. Kinney, supra. See also People v. MacEwing, 1955, 45 Cal.2d 218, 288 P.2d 257, where, in an abortion case, the court said:

" * * * The corroborating evidence is sufficient if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated is telling the truth."

People v. Collins, 1960, 186 Cal.App.2d 329, 9 Cal.Rptr. 33, cert. denied, 366 U.S. 904, 81 S.Ct. 1046, 6 L.Ed.2d 203, is a recent California case following the MacEwing rule. See also State v. Clark, 1955, 3 Utah 2d 382, 284 P.2d 700.

In this case, Barbara's testimony was corroborated by that of John, who testified to seeing Gutierrez, on the first visit, enter the bedroom with Barbara, emerge a few minutes later, only to re-enter the bedroom with a bottle. John testified, as additional corroboration, that, on the second visit, Gutierrez and Barbara went into the bedroom and returned ten or fifteen minutes later with the victim holding onto Gutierrez' arm and Gutierrez saying, "She kind of got drunk on me." Gutierrez herself admitted to police officers that she had been at the apartment at the time of the offense. Debbie also testified that she saw Barbara and Gutierrez go into the bedroom on the occasion of the second visit.

■ The evidence was also sufficient to support a conviction of Guerra, because, even if John were an accomplice, his testimony need not be corroborated. State v. Turnbow, supra; State v. Armijo, supra; State v. Chitwood, supra. The law of the case in this instance extended only to Barbara's testimony.

John testified that he gave $125.00 to Guerra; that in return therefor, Guerra gave him an envelope, sealed with a strip of cellophane tape and a hair on it. This envelope was eventually given to Debbie and passed to Gutierrez. John's testimony is that Guerra directed him to the apartment and that after the failure of the first attempt to abort, Guerra "said she would do it again," following which Guerra made arrangements for the second visit. Guerra also stated, according to the testimony of the police officers, that he knew of Gutierrez and of "the results of her activities or methods of performing this particular type of abortion," and that the hair under the sealing portion of the envelope was "identification to Mrs. Gutierrez that he had sent the parties over."

■ The two appellants also argue that the court erred in failing to instruct on circumstantial evidence. This is a point raised on appeal for the first time, as no instruction was tendered by the appellants at the trial. Even if such an omission were error, the error was not preserved. Sec. 21–1–1(51) (g), N.M.S.A.1953.

■ Finally, the appellants assert that the evidence was insufficient to support a

**584**

finding that the victim was pregnant at the time of the alleged abortion. The gist of this claim is that there was a failure to prove that the victim was "carrying a live fetus in her womb." This was a part of the court's instruction No. 13, which was given by the court at the request of the defendants, although the court refused to give the remainder of the requested instruction which went into considerable detail in its requirement that the state prove that the fetus was alive on the day of the first attempt to abort. The court also gave the statutory definition of "pregnancy" under § 40–3–3, N.M.S.A.1953, and it is obvious that the two instructions are, to say the least, incompatible. Be this as it may, the physician who originally examined Barbara testified as to the tests that he made on her before the abortion, and expressed the opinion that "she was about two months pregnant."

Although there is other proof in the record which, in a negative sense, might be construed to the effect that it was impossible to tell whether on the day of the original abortion attempt the fetus was alive or dead, this cannot give the appellants any solace because there was sufficient proof of the pregnancy. Appellants rely too much upon certain testimony taken out of context and fail to recognize the rule in this jurisdiction that a condition once shown to exist will be presumed to continue until the contrary is established by evidence,

direct or presumptive. Jeffra v. United States, 4th Cir. 1948, 169 F.2d 218; Harden v. State, 1948, 188 Tenn. 17, 216 S.W.2d 708; State v. Jackson, 1961, 59 Wash.2d 117, 366 P.2d 217. See also Petrakis v. Krasnow, 1949, 54 N.M. 39, 213 P.2d 220.

Although there was no direct, positive proof that on the day of the first attempted abortion the fetus was living, there was ample evidence before the jury for it to reasonably arrive at such a conclusion.

There being no prejudicial error, the judgments will be affirmed. It is so ordered.

CHAVEZ and NOBLE, JJ., concur.